IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| STEPHEN COLFIELD, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| SAFEWAY INC., *et al.*, | * | CIVIL NO.: WDQ-12-3544 |
| Defendants. | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

MEMORANDUM OPINION

Stephen Colfield ("Colfield") and Mia Colfield sued
Safeway, Inc. ("Safeway") and Alan Tlusty[1] (collectively "the
Defendants"), for employment discrimination and related state
law claims. Pending are Safeway's motion for partial dismissal,
Tlusty's motion to dismiss, and Colfield's motions for leave to
amend. For the following reasons, Safeway's motion will be
granted in part and denied in part. Tlusty's motion will be
granted. Colfield's motions for leave to amend will be granted.

---

[1] The Complaint mistakenly refers to Alan Tlusty as "Allen
Trusty." *See e.g.*, ECF No. 1 at 2 ¶ 4.

I.    Background[2]

On January 19, 2004, Safeway hired Colfield[3] as a food clerk at the Owings Mills store. ECF No. 1 ¶ 10. His supervisor and store manager was Wayne Sladic. *Id.* Colfield's co-workers elected him as the store's shop steward under a Collective Bargaining Agreement ("CBA") between Safeway and the labor union U.F.C.W. Local 27 ("Local 27"). *Id.* In late 2006, Sladic sought Colfield's cooperation in firing an employee on sick leave. *Id.* ¶ 11. Colfield refused. *Id.*

On March 15, 2007 Colfield was suspended without pay for witnessing his co-worker Mark Prince return items Prince had purchased. *Id.* ¶ 12. On April 7, 2007, Colfield was fired as a result of the incident. *Id.* On August 15, 2007, Colfield was reinstated after filing a grievance against his firing under the CBA. *Id.* Colfield was not paid during suspension, he did not "receive[] a promised promotion," and he was transferred to the Pikesville store where he remained shop steward. *Id.*

As shop steward, Colfield assisted employees by presenting grievances to management. ECF No. 1 ¶ 13. In February 2008,

---

[2] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[3] Colfield is African American. ECF No. 1 ¶ 2.

Colfield reported Pikesville store manager Dee Frances, to Safeway's Human Resources ("HR") representative Beverly Madden, Local 27, and the Maryland Department of Labor, Licensing and Regulations ("DLLR") for stealing employees' time. *Id.* In April 2009, Colfield reported to Madden a racial incident involving a manager or supervisor. *Id.*

On March 25, 2010, Colfield was injured on the job. ECF No. 1 ¶ 14. On March 30, 2010, the Pikesville store closed. *Id.* Despite his request to be transferred to a store near his home that needed a shop steward, Colfield was transferred to the Ellicott City store, which had a shop steward. *Id.* The Ellicott City store manager was Larry Kuntz. *Id.*

On June 16, 2010, Colfield went on injured workers' compensation leave. ECF No. 1 ¶ 15. In September 2010, he was "forced to return to work in a light duty status." *Id.* Kuntz failed to observe Colfield's light duty restrictions and gave him assignments aggravating his injuries. *Id.* Kuntz denied Colfield's requests to work overtime although he allowed Tiffani Mertes, a white employee, to work overtime. *Id.* In November 2010, Kuntz allowed Christine Haley, a white employee to "ring up" her sister's purchases in violation of Safeway's policy. *Id.* ¶ 16.

On August 22, 2011, Colfield's light duty restrictions ended, and he returned to full duty. ECF No. 1 ¶ 17. Although

Colfield was not shop steward, many employees approached him for assistance with grievances. *Id.* Safeway and Kuntz "were not pleased by these occurrences and severely restricted [his] interactions with co-workers." *Id.* Kuntz also instructed Colfield to clean up dead mice and "filthy trash from the trash compactor." *Id.* Colfield had never been given similar assignments "in twenty one years of [being] a food or produce clerk." *Id.* In September 2011, Colfield complained about Kuntz's discriminatory treatment to HR representative Karen Graham. *Id.* ¶ 18. Kuntz issued a disciplinary write-up of Colfield the next day. *Id.* On October 15, 2011, Colfield filed charges of discrimination against Safeway with the Equal Employment Opportunity Commission ("EEOC") for "denial of overtime work, retaliatory assignments and other discriminatory actions by [Kuntz]." ECF No. 1 ¶ 19. On November 26, 2011, Colfield met with Graham and Local 27 representative Suzie Levin about his charges and grievances. *Id.*

On December 12, 2011, Colfield unknowingly purchased a DVD the day before its release. ECF No. 1 ¶ 20. Tiffany Mertes, the white cashier who completed the transaction, reported it to Kuntz. *Id.* On December 13, 2011, Colfield was suspended for three weeks without pay. *Id.* ¶¶ 20, 21. No disciplinary action was taken against Mertes. *Id.* ¶ 20. On December 17, 2011, Kaysie Coffee, a white employee, was caught fixing her own

4

drinks at the store Starbucks in violation of store policy and was not punished. *Id.* On December 27, 2011, Levin told Colfield to report to the Owings Mill store. *Id.* ¶ 21. Colfield "protested this outcome as discriminatory." *Id.*

Around the time Colfield was transferred to Owings Mills, Safeway made Jimmy Bennett, an African American, store manager. ECF No. 1 ¶ 22. Bennett "disclosed to a number of employees" that he was sent "with directives to fire [Colfield]" because his race would allow him to "blunt [Colfield's] claims of race discrimination." *Id.* In December 2011, Bennett told produce manager Maria Jones about his plan to fire Colfield. *Id.* ¶ 23. After returning to work at Owings Mills, Colfield continued assisting employees with grievances and protesting actions he believed were "discriminatory and illegal employment practices." *Id.* ¶ 24.

On February 25, 2012, two men allegedly from Local 27 approached Colfield and acted in an intimidating manner. ECF No. 1 ¶ 25. The men ordered Colfield to stop assisting co-workers and "protesting Safeway's discriminatory activities." *Id.* On March 10, 2012, Levin told Colfield not to help another employee with a grievance, but Colfield continued his assistance. *Id.* On April 11, 2012, Don Perdoe, the store shop steward, and Mike Deinlien, the assistant manager, approached

Colfield "with information that [Bennett] planned to fire [Colfield] that week." *Id.* ¶ 26.

On April 25, 2012, a co-worker informed Colfield that Tia Pearson, a food clerk, planned to report Colfield to HR for making derogatory statements about other employees. ECF No. 1 ¶ 27. Colfield went to the management office and "requested to see Pearson about the allegation." *Id.* Bennett, the store manager, and two assistant managers, Deinlien and Angela Corpew, were present for the meeting between Colfield and Pearson. *Id.* Pearson "came into the meeting agitated and confrontational." *Id.* A "heated emotional exchange" took place. *Id.* Pearson was "attempting to escalate the situation and provoke [a] physical confrontation." *Id.* When Colfield attempted to leave the room, Pearson blocked his path and they bumped shoulders. *Id.* Colfield was immediately suspended. *Id.*

On June 14, 2012, Colfield was called to a meeting with a Local 27 representative and the Vice President of Operations. ECF No. 1 ¶ 28. Colfield was told he had been suspended for "workplace violence" for physically assaulting Pearson and Deinlien during the April 25, 2012 meeting. *Id.* Alan Tlusty, a Safeway security officer, "made up and embellished facts and information" about the meeting and "intimidated" Pearson and Deinlien into agreeing with Tlusty's version of events "to create a pretext to terminate [Colfield]." *Id.*

6

On July 11, 2012, Colfield received a "no probable cause" determination from the EEOC regarding his October 15, 2011 charge of discrimination. *See* ECF No. 1 ¶ 30. On July 13, 2012, Colfield filed a charge of discrimination with the EEOC alleging retaliation based on his suspension. ECF No. 18-3.[4] On July 16, 2012, Safeway informed Colfield that he was fired "based on circumstances surrounding [his] suspension." *Id.* On July 20, 2012, Colfield filed an amended charge of discrimination with the EEOC. ECF No. 21-1 at 34.[5]

On December 3, 2012, Colfield and his wife, Mia Colfield, sued Safeway and Tlusty. ECF No. 1.[6] On February 7, 2013,

---

[4] The parties disagree about whether this is a new charge of discrimination or an amended charge. *See* ECF No. 1 ¶ 30; ECF No. 29 at 26.

[5] This amended charge was not included in the pleadings. It is unclear what charge it seeks to amend or what type of discrimination it alleges.

[6] The Complaint (ECF No. 1) pleads eleven causes of action:
- Race Discrimination for Disparate Treatment (Count One) and Disparate Impact (Count Two) under Title VII against Safeway;
- Retaliation under Title VII (Count Three) against Safeway;
- Age Discrimination under the ADEA (Count Four) against Safeway;
- Violation of Section 1985 (Count Five) against the Defendants;
- Violation of Section 1981 (Count Six) against Safeway;
- Defamation (Count Seven), Intentional Infliction of Emotional Distress (Count Ten), and Loss of Consortium (Count Eleven) against the Defendants; and
- Wrongful and Abusive Discharge (Count Eight) and Negligent Hiring and Retention (Count Nine) against Safeway.

Safeway moved to dismiss Counts One, Two, and Four through Eleven. ECF No. 18. On February 7, 2013 Safeway answered Count Three. ECF No. 17. On March 8, 2013, Colfield responded. ECF No. 21. On March 20, 2013, Tlusty moved to dismiss the claims against him. ECF No. 27. On April 8, 2013, Safeway replied. ECF No. 29.

## II. Analysis

### A. Legal Standard

#### 1. Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

2. Subject Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff has the burden of proving that the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). The Court may "look beyond the pleadings" to decide whether it has subject matter jurisdiction, but it must presume that the factual allegations in the complaint are true. *Id.*

9

B.   Safeway's Motion to Dismiss

   1.   Failure to Exhaust Administrative Remedies
        (Counts Two and Four)

Safeway asserts that Colfield's Title VII disparate impact claim (Count Two) and his ADEA age discrimination claim (Count Four) must be dismissed because he failed to exhaust his administrative remedies. ECF No. 18-1 at 8.   Colfield concedes that he failed to exhaust administrative remedies for the age discrimination claim. ECF No. 21 at 1.   Accordingly, Count Four will be dismissed.

Before suing under Title VII, a plaintiff must exhaust his administrative remedies by filing an EEOC charge. *See* 42 U.S.C. § 2000e-5(f)(1); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). A failure to exhaust administrative remedies deprives federal courts of subject matter jurisdiction over the claim. *Id.* (*citing Davis v. North Carolina Dep't of Correction*, 48 F.3d 134, 138-40 (4th Cir. 1995)). The allegations filed with the EEOC define the scope of any subsequent civil claims. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996). "Only those discrimination claims stated in the initial charge, those reasonably related in the original complaint, and those developed by reasonable investigation of the original complaint" may serve as predicates for a Title VII suit. *Jones v. Calvert*

*Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2008) (internal
quotation marks omitted). A plaintiff's allegations of "a
discrete act or acts" in an EEOC charge are "insufficient when
the plaintiff subsequently alleges a broader pattern of
misconduct." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th
Cir. 2005).

Safeway argues that Colfield's EEOC charge alleged only
race and retaliation, and it did not allege disparate impact.
ECF No. 18-1 at 7. Colfield contends that he has exhausted
administrative remedies for his disparate impact claim because
it is reasonably related to his initial EEOC charge of race
discrimination. ECF No. 21-1 at 36. In Colfield's October 15,
2012 charge, he alleges that his white store manager, Larry
Kuntz,[7] would not permit him to work on Sundays while on workers'
compensation, even though two similarly situated white employees
were permitted to work Sundays. ECF No. 18-2 ¶ 1. He also
alleges that he had been subject to harassment by Kuntz and
written-up in retaliation for contacting Human Resources about
Kuntz's conduct. *Id.* The charge further alleges that Colfield
had been "discriminated against because of my race (Black) and
retaliated against in violation of Title VII." *Id.* ¶ 3.

---

[7] The Charge of Discrimination mistakenly refers to Kuntz as
"Kunze". ECF No. 18-2.

Colfield checked the boxes for "Race" and "Retaliation" on the charge form. ECF No. 18-2.

In a disparate impact claim, the plaintiff must allege that his employer engages in "some employment practice or procedure . . . which, though neutral or fair on its face, has a discriminatory impact on [a protected group]." *Pope v. City of Hickory, N.C.*, 679 F.2d 20, 22 (4th Cir. 1982); 42 U.S.C. § 2000e-2(k). Colfield's charge alleges that he was personally and intentionally discriminated against on the basis of his race by his manager. *See* ECF No. 18-2 ¶ 1. However, the charge does not refer to a facially neutral employment policy or allege that such a policy had a disproportionately adverse effect on an entire protected class. A reasonable investigation of instances of a manager's discrimination could not be expected to develop claims that facially neutral overtime and discipline policies had a disparate impact on a protected class.[8] Because Colfield's EEOC charge did not allege facts that are reasonably related to

_____

[8] *Compare Chacko*, 429 F.3d at 512 (a reasonable investigation of a plaintiff's charge alleging discrete instances of supervisor misconduct would not be expected to lead to a pattern of co-worker misconduct), *and Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 637-38 (9th Cir. 2002) (charge referring only to discriminatory conduct in relation to a faculty council election would not have resulted in investigation of discrimination in teaching assignments and class size), *with Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981) (investigation of charge alleging employer discriminated in promotions could reasonably be expected to result in investigation of entire promotional system).

a claim for disparate impact, he has failed to exhaust administrative remedies for his disparate impact claim.[9]

Colfield also argues that he exhausted his administrative remedies for his disparate impact claim by filing an amended charge with the EEOC on July 20, 2012 with the "continuing action" and "other" boxes checked and he wrote "impact neutral policies" on the form. ECF No. 21-1 at 36-37. Safeway contends that it has not received this amended charge and Colfield has not attached the charge to his pleadings. *See* ECF No. 29 at 26. On July 13, 2012, Colfield also filed a charge for retaliation based on his suspension. ECF No. 18-3. Although Colfield characterizes this as an amended charge,[10] there is no indication on the charge form that it was intended to amend a previous charge. *See* ECF No. 18-3. Thus, it is unclear if the July 20, 2012 amended charge sought to amend the original charge or the July 13, 2012 charge.[11] Colfield's right-to-sue letter received on July 11, 2012 relates to his original charge. ECF No. 1 ¶ 30. No right-to-sue letter about additional charges was attached to the complaint, and there is no indication that one

---

[9] *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (barring claims for retaliation and sex discrimination for failure to exhaust administrative remedies because investigation of those claims could not reasonably be expected to occur based on plaintiff's sole charge of race discrimination).

[10] ECF No. 1 ¶ 30.

was issued by the EEOC. Because it appears that these charges remain pending with the EEOC, Colfield has failed to exhaust his administrative remedies for his disparate impact claim.[12]

> 2.   Title VII Race Discrimination--Disparate
>      Treatment (Count One)

Title VII prohibits an employer from "discriminat[ing] against any person with respect to his compensation, terms, conditions, or privileges of employment," because of the person's race. 42 U.S.C. § 2000e-2(a). To show Title VII discrimination, a plaintiff must provide direct evidence of a Title VII violation, or proceed under the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case that raises an inference of illegal conduct.[13] "The elements of a prima facie case vary depending on the form of discrimination alleged." *Jenkins v. Balt. City Fire Dep't*, No. SKG-10-125, 2012 WL 1109730, at *12 (D. Md. Mar. 30, 2012). Here, Colfield alleges that he was subjected to disparate treatment because of his race. *See* ECF No. 1 ¶ 32.

---

[12] *See Davis v. North Carolina Dep't of Corr.*, 49 F.3d 134, 137-38 (4th Cir. 1995) (the EEOC must issue a right-to-sue letter for the district court to exercise subject matter jurisdiction over a claim).

[13] *See Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010); *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

To establish a prima facie case of disparate treatment, Colfield must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. To survive a motion to dismiss, a plaintiff "need not conclusively establish his *prima facie* case, or satisfy the *McDonnell Douglas* proof scheme." *Reed v. Maryland Dep't of Human Res.*, No. ELH-12-0472, 2013 WL 489985, at *18 (D. Md. Feb. 7, 2013).

Safeway asserts that Colfield has failed to state a claim for race discrimination because he has not alleged that he was treated differently than similarly situated employees outside his protected class. ECF No. 18-1 at 10. Colfield contends that he alleged five instances when a similarly situated white employee was treated more favorably. ECF No. 21-1 at 10. "A plaintiff that bases [his] allegations entirely upon a comparison to an employee from a non-protected class must demonstrate that the comparator was 'similarly situated' in all relevant respects."[14] A similarly situated employee is alike

---

[14] *Crawford v. Department of Corr. Educ.*, No. 3:11CV430-HEH, 2011 WL 5975254, at *7 (E.D. Va. Nov. 29, 2011); *see also Haywood v. Lock*, 387 F. App'x 355, 359 (4th Cir. 2010).

"with respect to performance, qualifications, and conduct."[15]
"[A]n employee need not show complete identity in comparing
himself to the better treated employee, but he must show
substantial similarity." *Radue*, 219 F.3d at 618.

Here, Colfield alleges that similarly situated employees,
outside his protected class, were given lesser punishments for
violations of Safeway purchase policies or for workplace
violence. For example, Colfield identifies a white Safeway
clerk, under the supervision of the same store manager, who
violated a purchase policy without punishment.[16] Colfield's
allegations are not conclusionary;[17] instead they state several
examples of employees outside his protected class who were
treated differently for violations of comparable store

---

[15] *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir.
2000); *see also Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245
F. App'x 255, 257 (4th Cir. 2007).

[16] On March 7, 2007, Christian Haley, a white Safeway employee,
rang up her sister's purchases in violation of Safeway's
purchase policies. ECF No. 1 ¶ 16. Kuntz was Haley's store
manager, and she did not receive disciplinary action for the
violation. *Id.*

[17] *Cf. Sawyers v. United Parcel Serv.*, No. GLR-12-3183, 2013 WL
2154794, at * 7 (D. Md. May 16, 2013) (plaintiff's allegations
were conclusionary when she alleged that "similarly situated
male drivers" were not issued reprimands); *Bellamy v.
Eyemasters, Inc.*, at * 2 (D. Md. Sept. 12, 2012) (plaintiff's
allegation was conclusionary when he alleged only that he "was
treated on unequal terms than the non-African Americans having
[the] same job description and position requirements").

policies.[18] Although the evidence may ultimately show that these employees are not sufficiently comparable, at this stage, Colfield has plausibly alleged that similarly situated employees outside his protected class were treated more favorably.[19] Accordingly, Safeway's motion to dismiss Count One will be denied.

>    3.    Section 1981 Claim (Count Six)

Count Six pleads a claim for race discrimination under § 1981 of the Civil Rights Act of 1866 ("§ 1981").[20] ECF No. ¶¶ 54-60. Section 1981 guarantees that all citizens shall have the same right to "make and enforce contracts . . . as enjoyed by white citizens." 42 U.S.C. § 1981(a). The elements of Title VII and § 1981 discrimination claims are the same. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 455 (2008); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 n.1 (4th Cir. 2002). Safeway's argument for the dismissal of Colfield's § 1981 claim is its argument to dismiss his Title VII race discrimination claim. *See* ECF No. 18-1 at 23. Because Colfield sufficiently

---

[18] Colfield relies on the more favorable treatment of white employees under the same supervisor for violations of store policy. *See* ECF No. 1 ¶¶ 16, 20.

[19] *See Reed*, 2013 WL 489985, at *18 (plaintiff sufficiently identified comparators by stating that two employees outside the plaintiff's protected class received more weeks of FMLA leave for different health conditions).

[20] 42 U.S.C. § 1981.

stated a claim for race discrimination under Title VII, *see supra* Part II.B.3., Safeway's motion to dismiss Count Six will also denied.

    4.    Section 1985 Claim (Count Five) [21]

In Count Five, Colfield asserts that "Safeway conspired with Local 27 for the purpose of depriving [Colfield] of the equal protection of the laws and of equal privileges and immunities under the laws by discriminating against [him] and terminating his employment." ECF No. 1 ¶ 50. To state a claim for racial conspiracy under § 1985(3), Colfield must allege (1) a conspiracy of two or more persons, (2) motivated by invidiously discriminatory class-based animus, (3) to deprive him of the equal enjoyment of his rights, (4) which results in injury, (5) as a consequence of an overt act committed by the defendants, and (6) a meeting of the minds of the defendants to violate his constitutional rights. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Section 1985 "provides no rights itself to the class conspired against"; rather, [t]he rights, privileges, and immunities that [it] vindicates must be found elsewhere." *United Bhd. Of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 833 (1983).

Safeway argues that Colfield's § 1985 claim is preempted by Title VII, and he cannot state a claim based on the same

---

[21] 42 U.S.C. § 1985.

18

substantive rights protected by Title VII. *See* ECF No. 18-1 at 17; *see Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 366-67 (1979). Colfield concedes that Title VII preempts his § 1985 claim, and seeks to amend his complaint to base his § 1985(3) claim on deprivation of his rights under the Thirteenth Amendment. ECF No. 21-1 at 14. Under Fed R. Civ. P. 15(a), if more than 21 days have passed since the service of a motion to dismiss, a party may only amend if the opposing party gives written consent or the Court permits the amendment. Leave to amend the complaint "should [be] freely give[n] when justice so requires." *Id.* Accordingly, Colfield's motion for leave to amend Count Five will be granted. Because the current complaint fails to state a § 1985 claim, Count Five will be dismissed without prejudice.

     5.   Defamation (Count Seven)

Colfield asserts a claim for defamation in Count Seven. ECF No. 1 ¶¶61-68. Under the doctrine of respondeat superior, an employer is liable for the tortious conduct of its employees only when they are acting within the scope of employment. *See Silvera v. Home Depot U.S.A., Inc.*, 189 F. Supp. 2d 304, 308 (D. Md. 2002); *Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991).

Here, Colfield failed to plead respondeat superior liability. Colfield alleges that Tlusty, an employee of Safeway, fabricated a story about a physical assault that led to

19

Colfield's termination;[22] however, he does not allege a reason that this action should be imputed to Safeway. Colfield states that "Defendant Safeway hired Defendant Tlusty as its security officer and knew or should of known of the dishonest methods and means use[d] by [Tlusty] against outspoken or 'problem' employees at Safeway." ECF No. 1 ¶ 65. This does not sufficiently plead that Tlusty was acting within the scope of his employment. Colfield also generalizes that "Defendants knowingly and or recklessly made the aforementioned false and defamatory statements . . ." ECF No. 1 ¶ 64. However, Colfield recites no defamatory statements made by Safeway. Because Colfield has failed to allege that Safeway should be liable for Tlusty's tortious conduct, Safeway's motion to dismiss Count Seven will be granted.[23]

6. Wrongful and Abusive Discharge (Count Eight)

In Maryland, an at-will employee can raise a wrongful discharge claim only if his termination violated a "clear mandate of public policy." *Adler v. Am. Standard Corp.*, 432 A.3d 464, 473 (Md. 1981). To state a claim for wrongful discharge, a plaintiff must show: "(1) that he was discharged;

---

[22] *See* ECF No. 1 ¶¶ 62, 63.

[23] *See G.E. Tignall & Co., Inc. v. Reliance Nat'l Ins. Co.*, 102 F. Supp. 2d 200, 307 (D. Md. 2000) ("Under Maryland law, a plaintiff pursuing a theory of vicarious liability must affirmatively plead such an action.").

(2) that the dismissal violated some clear mandate of public policy; and (3) that there is a nexus between the defendant and the decision to fire [him]." *Shapiro v. Massengill*, 661 A.2d 202, 213 (Md. Ct. Spec. App. 1995). The plaintiff must demonstrate the public policy with "clarity, specificity, and authority." *Id.*

Colfield alleges that the actions of Safeway in discharging him were "against the public policy of the State of Maryland." ECF No. 1 at 19. This bare conclusion is not a sufficient allegation that Colfield's dismissal was in violation of a clear public policy mandate.[24] In an effort to remedy this deficiency, in his Response, Colfield seeks to amend his Complaint to allege that his wrongful discharge claim is predicated on public policy mandates against defamation and impersonating a police officer. ECF No. 21 at 25. Under Fed R. Civ. P. 15(a), if more than 21 days have passed since the service of a motion to dismiss, a party may only amend if the opposing party gives written consent or the Court permits the amendment. Leave to amend the complaint "should [be] freely give[n] when justice so requires." *Id.* Colfield's motion for leave to amend Count Eight will be granted. Because the complaint fails to state a claim for

---

[24] *See Robinson v. Genesis Health Ventures, Inc.*, No. Civ. H-02-875, 2002 WL 32362036, at *4 (D. Md. Nov. 15, 2002) (explaining that plaintiff must identify a public policy that was violated to state a claim for wrongful discharge).

wrongful discharge, Count Eight will be dismissed without
prejudice.

    7.    Negligent Hiring and Retention (Count Nine)

    Colfield pleads a negligent hiring and retention claim
against Safeway in Count Nine.  ECF No. 1 ¶¶ 75-85.  He alleges
that Safeway knew or should have known that Tlusty "would use
intimidating rogue police tactics against [Colfield] and other
African American employees who Safeway perceived as 'problem'
employees."  *Id.* ¶ 79, 81.  In Maryland, to prove negligent
hiring a plaintiff must show that: (1) "[his] injury was caused
by the tortious conduct of an employee;" (2) "the employer knew
or should have known that the employee was capable of inflicting
harm of some type;" (3) "the employer failed to use proper care
in hiring or training the employee;" and (4) "the employer's
breach was the proximate cause of the plaintiff's injury."
*Williams v. Cloverland Farms Dairy, Inc.*, 78 F. Supp. 2d 479,
484 (D. Md. 1999) (*citing Bryant*, 923 F. Supp. at 751).

    Safeway argues that Colfield's negligent hiring and
retention claim fails because he did not allege that Safeway
knew or should have known that Tlusty was potentially dangerous.
ECF No. 18-1 at 30.  Colfield contends that Safeway should have
known because Mike Deinlien, an assistant store manager, learned
of Tlusty's behavior when Tlusty intimidated him into falsely
accusing Colfield of workplace violence.  ECF No. 21-1 at 28.

However, this is not prior conduct that would have put Safeway on notice; instead, it is the same conduct Colfield relies on to show he was injured by Tlusty's actions. *See* ECF No. 1 ¶ 77. Colfield also asserts that Safeway was on notice because Bennett, a store manager, encouraged Tlusty to obtain false statements against Colfield. ECF No. 21-1 at 29. This allegation does not appear in the complaint. Colfield's general allegations do not provide facts showing that Safeway had actual or constructive knowledge that Tlusty was capable of inflicting harm.[25] Accordingly, Count Nine will be dismissed.

> 8. Intentional Infliction of Emotional Distress
> (Count Ten)

In Count Ten, Colfield pleads an intentional infliction of emotional distress ("IIED") claim against the Defendants. ECF No. 1 ¶¶ 86-91. In Maryland, to state a claim for IIED, the plaintiff must show that the defendant intentionally or recklessly engaged in extreme and outrageous conduct, and the wrongful conduct caused the plaintiff severe emotional distress. *See Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992).

---

[25] *See Jarvis v. Securitas Sec. Servs. U.S.A., Inc.*, No. 11-CV-00654-AW, 2012 WL 527597, at *5-6 (D. Md. Feb. 16, 2012) (dismissing claim when plaintiff failed to provide factual basis for assertion that employer had knowledge of security guard's conduct or general character).

Safeway argues that Colfield has failed to allege "extreme and outrageous conduct" or "severe emotional distress." ECF No. 81-1 at 33, 36. Extreme and outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lasater v. Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010) (*quoting Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). Defamatory conduct "in no way satisfies [the] exacting standard for extreme and outrageous conduct." *Batson*, 602 A.2d at 1216. Severe emotional distress under Maryland law must be "so severe as to have disrupted [the plaintiff's] ability to function on a daily basis." *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 750 (D. Md. 1996).

Colfield has not stated a claim for IIED. He has alleged that Safeway unjustly terminated him for "alleged workplace violence," suspended him for extended periods of time without pay, and fabricated a story that he assaulted a co-worker. ECF No. 1 ¶ 87. These allegations are not the extreme and outrageous conduct required to state a claim for IIED.[26]

---

[26] *See Batson*, 602 A.2d at 1216 (defamatory statements do not meet the standard for extreme and outrageous conduct); *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 320 (Md. 1995) (employee terminated "abruptly and harshly" not extreme and outrageous conduct).

Colfield's sole allegation about his emotional distress is that he "has suffered and will continue to suffer, severe and extreme emotional distress." ECF No. 1 ¶ 91. These general allegations do not sufficiently plead severe emotional distress.[27] Because Colfield has failed to state a claim for IIED, Count Ten will be dismissed.

9. Loss of Consortium (Count Eleven)

Colfield and his wife, Mia Colfield, plead a claim for loss of consortium in Count Eleven. *See* ECF No. 1 ¶¶ 92-94. In his opposition, Colfield failed to respond to Safeway's argument to dismiss the loss of consortium claim.[28] Loss of consortium is a derivative claim. *See Oaks v. Connors*, 660 A.2d 423, 430 (Md. 1995). Maryland courts have not recognized that a loss of consortium claim may be based on federal civil rights violations. *Brown v. Youth Servs. Int'l of Baltimore, Inc.*, 904 F. Supp. 469, 470 (D. Md. 1995). Because Colfield's only remaining claims against Safeway are based on federal civil

[27] *See Caldor, Inc. v. Bowden*, 625 A.2d 959, 964 (Md. 1993) ("For emotional distress to be severe, it must be so acute that no reasonable man could be expected to endure it.") (internal quotation marks omitted).

[28] The Court could deem this claim abandoned based on Colfield's failure to respond. *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (a party abandons her claim by failing to respond to an argument); *Wright v. Carroll Cnty. Bd. of Educ.*, No. 11-CV-3103, 2013 WL 4525309, at *10 n.11 (plaintiffs abandoned claims by failing to respond to defendant's argument in a motion to dismiss).

rights statutes, his loss of consortium claim will be dismissed.[29]

C.    Tlusty's Motion to Dismiss

Colfield asserts claims against Tlusty for violations of § 1985,[30] defamation, IIED, and loss of consortium. ECF No. ¶¶ 49-53, 61-68, 86-94. Tlusty argues that all claims against him should be dismissed for failure to state a claim. *See* ECF No. 27 at 1-2. Colfield has failed to respond to Tlusty's motion to dismiss.

1.    Section 1985 Claim (Count Five)

Tlusty argues that Colfield has failed to sufficiently allege Tlusty's involvement in a conspiracy, and Colfield's claim is pre-empted by Title VII. ECF No. 27-1 at 1. To state a claim for racial conspiracy under § 1985(3), Colfield must allege (1) a conspiracy of two or more persons, (2) motivated by invidiously discriminatory class-based animus, (3) to deprive him of the equal enjoyment of his rights, (4) which results in injury, (5) as a consequence of an overt act committed by the defendants, and (6) a meeting of the minds of the defendants to violate his constitutional rights. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

---

[29] *See Brown*, 904 F. Supp. at 470-71 (holding that the Court does not recognize plaintiffs' claim for loss of consortium based on violations of Title VII and § 1981).

[30] 42 U.S.C. § 1985.

Colfield alleges in his § 1985 claim that Safeway's conduct "was motivated impermissibly by [Colfield's] race, age, and protected activities protesting Safeway's illegal discriminatory actions . . ." ECF No. 1 ¶ 51. A plaintiff cannot assert a § 1985(3) claim based on substantive rights created by Title VII. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 366-67 (1979).

Colfield has also failed to make any factual allegations that Tlusty was involved in a conspiracy. Colfield does not allege that Tlusty communicated with any member of Local 27. *See* ECF No. 1 ¶ 50 (alleging Safeway conspired with Local 27). With regards to Tlusty, Colfield's only allegation is that Tlusty "made up and embellished facts" about Colfield's confrontation with a fellow employee and Tlusty intimidated two witnesses to corroborate his story as a pretext for terminating Colfield. ECF No. 1 ¶ 29. This is not sufficient to allege that Tlusty was involved in a conspiracy with Safeway and Local 27.[31] To the extent Colfield alleges Tlusty engaged in a conspiracy with Safeway, it is the general rule that a corporation cannot conspire with its employees. *See Bursh v. Snider*, 461 F. Supp. 598, 601 (D. Md. 1978); *Marmott v. Maryland*

---

[31] *See A Society Without A Name*, 655 F.3d at 347 ("[Plaintiff] fails to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made.").

*Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986). Two exceptions
to this general rule exist when an employee has an "independent
personal stake in achieving the corporation's illegal
objective," or when the acts of the employee were unauthorized.
*See Yates v. Hagerstown Lodge No. 212 Loyal Order of Moose*, 878
F. Supp. 788, 802 (D. Md. 1995). Here, Colfield alleges that
Safeway was involved in the conspiracy; thus Colfield has not
alleged that Tlusty's actions were unauthorized. *See* ECF No. 1
¶¶ 49-52. Colfield also does not allege that Tlusty had a
personal stake in Colfield's termination. *See* ECF No. 1 ¶ 29.[32]
Accordingly, Tlusty's motion to dismiss Count Five will be
granted.

      2.    Defamation Claim (Count Seven)

     To establish a claim for defamation under Maryland law, the
plaintiff must show that: (1) the defendant made a defamatory
statement regarding the plaintiff to a third person; (2) the
statement was false; (3) the defendant was at fault in making
the statement; and (4) the plaintiff suffered harm as a result.
*See Southern Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp.
2d 837, 843 (D. Md. 2005). Tlusty argues that Colfield has
failed to allege a claim for defamation because he "failed to
provide sufficient information about what defamatory statements

---

[32] In fact, Colfield argues in his Response that Tlusty likely
fabricated facts at the direction of his supervisor Bennett, the
store manager. ECF No. 21-1 at 22.

were supposedly made, to whom they were published, when they were published, or how they were communicated." ECF No. 27-1 at 17. Colfield's complaint contains allegations that Tlusty "made up and embellished facts" about the confrontation,[33] "fabricated a story" about the assault,[34] "lied that [Colfield] physically assaulted the co-worker,"[35] and "intimidated" Pearson and Deinlien into agreeing with his version of events.[36] The complaint does not allege a defamatory statement about Colfield or to whom it was published.[37] With regard to publication, Colfield makes a blanket assertion that Tlusty "published the false and defamatory statements to the Safeway employees, customers, Local 27, and other third parties . . ." ECF No. 1 ¶ 66. This generalized allegation is not sufficient. Accordingly, Tlusty's motion to dismiss Count Seven will be granted.

---

[33] ECF No. 1 ¶ 29.

[34] *Id.* ¶ 62.

[35] *Id.* ¶ 63.

[36] *Id.* ¶ 29.

[37] *See Brown v. Ferguson Enters., Inc.*, No. CCB-12-1817, 2012 WL 6185310, at *3 (D. Md. Dec. 11, 2012) (dismissing defamation claim when plaintiff failed to plead the content of the statement and when or how the statements were communicated); *Davidson-Nadwodny v. Wal-Mart Assocs., Inc.*, No. CCB-07-2595, 2008 WL 2415035, at *5 (D. Md. June 3, 2008) (dismissing defamation claim when plaintiff failed to allege content of statements, or to whom they were made).

3.    IIED Claim (Count Ten)

In Count Ten, Colfield asserts an IIED claim against Safeway and Tlusty.  As discussed above, *see supra* Part II.B.9., Colfield has failed to allege the extreme and outrageous conduct and severe emotional distress required to state a claim for IIED.[38]  Tlusty's motion to dismiss Count Ten will be granted.

4.    Loss of Consortium (Count Eleven)

Colfield and his wife also assert a claim for loss of consortium against Tlusty.  ECF No. 1 ¶¶ 92-94.  Loss of consortium is a derivative claim.  *See Oaks v. Connors*, 660 A.2d 423, 430 (Md. 1995).  Because all other claims against Tlusty will be dismissed, Colfield's loss of consortium claim will also be dismissed.

III. Conclusion

For the reasons stated above, Safeway's motion will be granted in part and denied in part.  Tlusty's motion will be granted.  Colfield's motions for leave to amend will be granted.

9/18/13
Date

William D. Quarles, Jr.
United States District Judge

---

[38] *See Batson*, 602 A.2d at 1216 (defamatory statements do not meet the standard for extreme and outrageous conduct); *Caldor, Inc.*, 625 A.2d at 964 ("For emotional distress to be severe, it must be so acute that no reasonable man could be expected to endure it.") (internal quotation marks omitted).

30