IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

STEPHEN COLFIELD, *et al.*,

    Plaintiffs,

       v.

                    CIVIL NO.: WDQ-12-3544

SAFEWAY, INC., *et al.*,

    Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Stephen Colfield ("Colfield") sued Safeway, Inc. ("Safeway") and United Food and Commercial Workers International Union, Local 27 ("Local 27") for employment discrimination and conspiracy to interfere with civil rights.  Pending are Safeway's motion for partial dismissal and Local 27's motion to dismiss.  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the following reasons, the Safeway and Local 27 motions will be granted.

I.  Background[1]

On January 19, 2004, Safeway hired Colfield[2] as a food clerk
at its Owings Mills store.  ECF No. 38-1 ¶ 9.  His supervisor
and store manager was Wayne Sladic.  *Id*.  Colfield's co-workers
elected him as the store's shop steward under a Collective
Bargaining Agreement ("CBA") between Safeway and Local 27.  *Id*.
In late 2006, Sladic sought Colfield's cooperation in firing an
employee on sick leave.  *Id*. ¶ 10.  Colfield refused.[3]  *Id*.

On March 15, 2007 Colfield was suspended without pay for
seeing his co-worker Mark Prince return items Prince had bought.
*Id*. ¶ 11.  On April 7, 2007, Colfield was fired as a result of
the incident.  *Id*.  On August 15, 2007, Colfield was reinstated
after filing a grievance against his firing under the CBA.  *Id*.
Colfield was not paid during suspension, he did not "receive[] a
promised promotion," and he was transferred to the Pikesville
store where he remained shop steward.  *Id*.

---

[1] On a motion to dismiss, the well-pled allegations in the
complaint are accepted as true.  *Brockington v. Boykins*, 637
F.3d 503, 505 (4th Cir. 2011).  The Court will consider the
pleadings, matters of public record, and documents attached to
the motions that are integral to the complaint and whose
authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l
Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[2] Colfield is African American.  ECF No. 38-1 ¶ 1.

[3] Colfield alleges that "[s]ince this incident, Safeway and its
employees, agents, and representatives have targeted [him] for
retaliation, discrimination, harassment, intimidation, and other
[] discriminatory employment actions."  ECF No. 38-1 ¶ 10.

As shop steward, Colfield was "approached often by his coworkers with grievances which he would pursue with management." ECF No. 38-1 ¶ 12.  In February 2008, Colfield reported Pikesville store manager Dee Frances, to Safeway's Human Resources ("HR") representative Beverly Madden, Local 27, and the Maryland Department of Labor, Licensing and Regulations ("DLLR") for stealing employees' time. *Id.*  In April 2009, Colfield reported to Madden a racial incident involving a manager or supervisor. *Id.*

On March 25, 2010, Colfield was injured on the job.  ECF No. 38-1 ¶ 13.  On March 30, 2010, the Pikesville store closed. *Id.*  Despite his request to be transferred to a store near his home that needed a shop steward, Colfield was transferred to the Ellicott City store, which had a shop steward. *Id.*  The Ellicott City store manager was Larry Kuntz. *Id.*

On June 16, 2010, Colfield went on injured workers' compensation leave.  ECF No. 38-1 ¶ 14.  In September 2010, he was "forced to return to work in a light duty status." *Id.*  Kuntz failed to observe Colfield's light duty restrictions and gave him assignments "that aggravated [his] injuries." *Id.*  Kuntz also denied Colfield's requests to work overtime although he allowed Tiffani Mertes, a white employee, to work overtime. *Id.*  In November 2010, Kuntz allowed Christine Haley, a white

employee to "ring up" her sister's purchases in violation of Safeway's policy. *Id.* ¶ 15.

On August 22, 2011, Colfield's light duty restrictions ended, and he returned to full duty. ECF No. 38-1 ¶ 16. Although Colfield was not shop steward, many employees approached him for assistance with grievances. *Id.* Safeway and Kuntz "were not pleased by these occurrences and severely restricted [his] interactions with co-workers." *Id.* Kuntz also instructed Colfield to clean up dead mice and "filthy trash from the trash compactor." *Id.* Colfield had never been given similar assignments "in twenty one years of [being] a food or produce clerk." *Id.*

In September 2011, Colfield complained about Kuntz's discriminatory treatment to HR representative Karen Graham. ECF No. 38-1 ¶ 17. Kuntz "issued a disciplinary write-up" of Colfield the next day. *Id.* On October 15, 2011, Colfield filed charges of discrimination against Safeway with the Equal Employment Opportunity Commission ("EEOC") for "denial of overtime work, retaliatory assignments and, other discriminatory actions by [Kuntz]." *Id.* ¶ 18.

On November 15, 2011, Colfield witnessed a white employee intentionally push a shopping cart into an assistant manager. ECF No. 38-1 ¶ 15. The employee was suspended for three months before being reinstated with back pay. *Id.* Colfield "spoke up

4

and protested to his supervisor, [] Kuntz, and Local 27, that the disparity in treatment between the white employees and [] Colfield were discriminatory and illegal." *Id.* On November 26, 2011, Colfield met with Graham and Local 27 representative Suzie Levin about his charges and grievances. *Id.* at 18.

On December 12, 2011, Colfield unknowingly purchased a DVD the day before its release. ECF No. 38-1 ¶ 19. Tiffani Mertes, the white cashier who completed the transaction, reported it to Kuntz. *Id.* On December 13, 2011, Colfield was suspended for three weeks without pay. *Id.* ¶ 19-20 No disciplinary action was taken against Mertes. *Id.* ¶ 19.

On December 17, 2011, Kaysie Coffee, a white employee, was caught fixing her own drinks at the store Starbucks in violation of store policy and was not punished. *Id.* On December 27, 2011, Levin told Colfield to report to the Owings Mill store. *Id.* ¶ 20. Colfield "protested this outcome as discriminatory." *Id.*

Around the time Colfield was transferred to Owings Mills, Safeway made Jimmy Bennett, an African American, store manager. ECF No. 38-1 ¶ 21. Bennett "disclosed to a number of employees" that he was sent "with directives to fire [Colfield] and other employees" because his race would allow him to "blunt [Colfield's] claims of race discrimination." *Id.* In December

2011, Bennett told produce manager Maria Jones about his plan to fire Colfield. *Id.* ¶ 22.

After returning to work at Owings Mills, Colfield continued assisting employees with grievances and protesting actions he believed were "discriminatory and illegal employment practices." ECF No. 38-1 ¶ 23. On February 25, 2012, two men allegedly from Local 27[4] approached Colfield and acted in an intimidating manner. *Id.* ¶ 24. The men ordered Colfield to stop assisting co-workers and "protesting Safeway's discriminatory actions." *Id.* On March 10, 2012, Levin told Colfield not to help another employee with a grievance, but Colfield continued his assistance. *Id.* ¶ 25.

On April 11, 2012, Don Perdoe, the store shop steward, and Mike Deinlien, the assistant manager, approached Colfield "with information that [Bennett] planned to fire [Colfield] that week." ECF No. 38-1 ¶ 25. On April 25, 2012, a co-worker informed Colfield that Tia Pearson, a food clerk, planned to report Colfield to HR for making derogatory statements about other employees. *Id.* ¶ 26. Colfield went to the management office and "requested to see Pearson about the allegation." *Id.* Bennett and two assistant managers, Deinlien and Angela Corpew, were present for the meeting between Colfield and Pearson. *Id.* Pearson "came into the meeting agitated and confrontational."

---

[4] The two men refused to identify themselves. ECF No. 38-1 ¶ 24.

*Id.*   A "heated emotional exchange" took place.   *Id.*   Pearson
attempted to provoke a physical confrontation.   *Id.*   When
Colfield attempted to leave the room, Pearson blocked his path
and they bumped shoulders.   *Id.*   Colfield was immediately
suspended.   *Id.*

On June 14, 2012, Colfield was called to a meeting with
Safeway's Vice President of Operations and Local 27
representative "Mr. Henry."   ECF No. 38-1 ¶ 27.   Colfield was
told he had been suspended for "workplace violence" for
physically assaulting Pearson and Deinlien during the April 25,
2012 meeting.   *Id.*   Alan Tlusty,[5] a Safeway security officer,
"made up and embellished facts and information" about the
meeting and "intimidated" Pearson and Deinlien into agreeing
with Tlusty's version of events "to create a pretext to
terminate [Colfield]."   *Id.* ¶ 28.

On July 11, 2012, Colfield received a "no probable cause"
determination from the EEOC regarding his October 15, 2011
charge of discrimination.   *See* ECF No. 38-1 ¶ 29.   On July 13,
2012, Colfield amended his charge of discrimination with the
EEOC alleging retaliation based on his suspension.   *Id.*   On July
16, 2012, Safeway informed Colfield that he was fired "based on
circumstances surrounding [his] suspension."   *Id.*

---

[5] Throughout the amended complaint, Colfield mistakenly refers to
Tlusty as "Trusty."   *See* ECF No. 38-1 ¶ 28.

On December 3, 2012, Colfield and his wife, Mia Colfield, sued Safeway and Tlusty. ECF No. 1.  On February 7, 2013, Safeway moved to dismiss ten of the eleven claims.  ECF No. 18. On March 20, 2013, Tlusty moved to dismiss the claims against him.  ECF No. 27.  On September 19, 2013, the Court dismissed the claims against Tlusty and the claims asserted by Mrs. Colfield.  ECF Nos. 31-32.  The Court dismissed all but one claim against Safeway, but granted Colfield's request to amend two counts.  *Id.*

On December 3, 2013, Colfield filed an amended complaint. ECF Nos. 38-1, 41.  Colfield pled four causes of action[6] and added Local 27 as a defendant.  ECF No. 38-1.  On December 17, 2013, Safeway moved to dismiss Count 3 for failure to state a claim.  ECF No. 43.  On January 14, 2014, Colfield opposed that motion.  ECF No. 48.  On January 29, 2014, Local 27 moved to dismiss Count 3 for the same reasons as Safeway.  ECF No. 51. On January 31, 2014, Safeway replied to Colfield's opposition. ECF No. 52.  On February 26, 2014, Colfield opposed Local 27's motion.  ECF No. 60.  On March 12, 2014, Local 27 replied.  ECF No. 61.

---

[6] Race discrimination in violation of Title VII against Safeway (Count 1), retaliation in violation of Title VII against Safeway (Count 2), conspiracy to deprive Colfield of his civil rights under the Thirteenth Amendment in violation of 42 U.S.C. § 1985(3) against Safeway and Local 27 (Count 3), and race discrimination in violation of 42 U.S.C. § 1981 against Safeway (Count 4).  ECF No. 38-1 ¶¶ 30-52.

II. Analysis

  A. Legal Standard

    1. Failure to State a Claim

    Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

    The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

    This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

9

(2009) (*quoting Twombly*, 550 U.S. at 557).  The complaint must
not only allege but also "show" that the plaintiff is entitled
to relief.  *Id*. at 679 (internal quotation marks omitted).
"Whe[n] the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged—but it has not shown—that the pleader is entitled to
relief."  *Id*. (internal quotation marks and alteration omitted).

   B. Safeway's and Local 27's Motions to Dismiss

     Safeway and Local 27 argue that they are entitled to
summary judgment because Colfield failed to allege sufficiently
that the Defendants had "a meeting of the minds."  ECF Nos. 43-1
at 3; 51-1 at 3-4.  Colfield asserts that the facts in the
complaint "clearly suggest" the existence of a conspiracy, and
discovery will establish the exact actors and communications.
*See* ECF No. 48-1 at 3-5.

     To state a claim for racial conspiracy under § 1985(3),
Colfield must allege (1) a conspiracy of two or more persons,
(2) motivated by invidiously discriminatory class-based animus,
(3) to deprive him of the equal enjoyment of his rights, (4)
which results in injury, and (5) as a consequence of an overt
act committed by the defendants.  *A Society Without a Name v.
Virginia*, 655 F.3d 342, 346 (4th Cir. 2011); *Simmons v. Poe*, 47
F.3d 1370, 1376 (4th Cir. 1995).  "Moreover, the plaintiff 'must
show an agreement or a meeting of the minds by the defendants to

violate the plaintiff's constitutional rights.'"  *A Society Without a Name*, 655 F.3d at 346 (quoting *Simmons*, 47 F.3d at 1377).  This is a "relatively stringent" standard.  *Simmons*, 47 F.3d at 1377; *see also Lewin v. Cooke*, 95 F. Supp. 2d 513, 525 (E.D. Va. 2000) ("Because of the high threshold that a Plaintiff must meet to establish a prima facie case under section 1985, courts often grant motions of dismissal.").

Courts "have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *A Society Without A Name,* 655 F.3d at 346; *see also Simmons,* 47 F.3d at 1377 ("[The Fourth Circuit] has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy, such that the claim can withstand a summary judgment motion."); *Rich v. Montgomery County, Md.,* 98 F. App'x 933, 938 (4th Cir.2004) (affirming dismissal because plaintiff did not allege "facts that tend to show that a joint plan or agreement existed to deprive [plaintiff] of her constitutional rights").  In *A Society Without A Name*, the Fourth Circuit affirmed the dismissal of a § 1985(3) conspiracy claim because the complaint "fail[ed] to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the

11

manner in which any such communications were made."   655 F.3d at 347.

Safeway and Local 27 argue that "there is nothing in the Amended Complaint that indicates an agreement between Safeway and Local 27 to take any action whatsoever against [Colfield] . . . ."   ECF No. 43-1 at 5; see 51-1 at 4 ("[The] Plaintiff points to no statement or communication by or between Safeway and/or Local 27 that shows a conspiracy.").   Colfield contends that he is only required to plead enough facts "to suggest" an agreement, and that he fulfilled this requirement because he "identified five conspirators" and their communications.   See ECF No. 48-1 at 4.   Colfield cites paragraphs 14-15 and 18-28 of the amended complaint in support of this contention.   Id. 4-6.

Despite Colfield's assertions that the complaint "implies," "made clear," and "clearly suggest[s]" a conspiracy,[7] the pleading rarely mentions Local 27, and fails to provide sufficient facts to support a § 1985(3) conspiracy claim.   Local 27 is only mentioned in the complaint in instances in which Colfield complained to a Local 27 representative about alleged discriminatory conduct, and when a representative was present for Colfield's termination.   See ECF No. 38-1 ¶¶14-15, 18-28.   A union representative's presence at a meeting that requires a

---

[7] See ECF No. 48-1 at 4-6.

union representative under a CBA, and Local 27's failure to react to complaints in a manner that Colfield deems sufficient are not enough to state a § 1985(3)conspiracy claim. Colfield has alleged no facts showing that Local 27's actions were part of an agreement with Safeway.

The only improper Local 27 conduct alleged in the complaint is that two persons confronted Colfield in the Safeway to "discourage him from protesting Safeway's discriminatory actions." ECF No. 38-1 ¶ 24. Even if the Court were to assume that the two persons were from Local 27, Colfield has alleged no facts that show that they acted on Safeway's behalf or in agreement with Safeway.[8] At most, the "allegations amount to 'parallel conduct and a bare assertion of a conspiracy.'" *A Society Without A Name*, 655 F.3d at 347 (quoting *Twombly*, 550 U.S. at 556).

The only "meeting of the minds" sufficiently alleged in the complaint is between Safeway and its own employees. Colfield asserts that there was a plan to fire him, Bennett was transferred to the Owings Mills store for that purpose, Tlusty

---

[8] Colfield argues that "[i]t is clear that these two union members received information from individuals at the Owings Mills store" because "they knew what he looked like; they knew he protested Defendant's discriminatory actions and assisted employees with grievances; they knew where he worked; they knew his work schedule; . . . and they knew that security would not be present when they found and threatened [him.]" ECF No. 48-1 at 5. However, these facts were not pled in the complaint and are merely Colfield's conclusions.

fabricated a story in which Colfield committed "workplace violence," and pressured other Safeway employees into corroborating those facts.  ECF No. 48-1 at 5-6.  The only individuals involved in this alleged plan are Safeway employees.[9] Because a corporation cannot conspire with its employees, Colfield's conspiracy claim must fail.  *See Facey v. Dae Sung Corp.*, 992 F. Supp. 2d 536, 542 (D. Md. 2014); *Lewin*, 95 F. Supp. 2d at 524-25.

Accordingly, the Court will grant the Safeway and Local 27 motions to dismiss because Colfield only makes conclusionary allegations about the alleged conspiracy and "fails to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made."  *A Society Without A Name*, 655 F.3d at 347.

---

[9] Colfield contends that Mr. Henry was also a conspirator because Mr. Henry was present at the meeting in which Colfield was terminated.  However, mere presence at a meeting as a representative of a union member under a CBA is not sufficient to show a meeting of the minds.  *Cf. Facey v. Dae Sung Corp.*, 992 F. Supp. 2d 536, 540-42 (D. Md. 2014) (analyzing the participation of a union in a § 1985(3) conspiracy).  Colfield cites no other communications in support of his argument that Local 27 was a part of an elaborate ruse.

## III. Conclusion

For the reasons stated above, Safeway's motion to dismiss Count Three of the amended complaint and Local 27's motion to dismiss will be granted.

_11/18/14_
Date

William D. Quarles, Jr.
United States District Judge