# SAFEWAY INC'S

# STATEMENT OF POSITION

# STEPHEN COLFIELD

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# EEOC CHARGE NO. 531-2012-01776

This Statement of Position is in response to the above-referenced charge. The Charging Party, Stephen Colfield, alleges he was subject to race discrimination and retaliation. After a thorough investigation of the allegations, Safeway has determined it did not discriminate or retaliate against the Charging Party. Mr. Colfield was terminated based his violation of Safeway's Workplace Violence Policy.

## GENERAL INFORMATION

Colfield was hired on January 19, 2004 as a part-time Food Clerk. On October 3, 2004, Colfield was promoted to a full-time Food Clerk in the Produce Department at Safeway Store 1657 located at 10335 Reisterstown Road, Owings Mills, Maryland 21117. On October 21, 2007, Colfield was transferred to the Pikesville Safeway Store 1994 and worked at that establishment until that store closed. Colfield transferred in March 2010 to Safeway Store 1459, located at 4370 Mongtomery Road, Ellicott City, Maryland 21043. Colfield, due to disciplinary action, transferred on January 1, 2012 to Store 1657. Colfield worked at Store 1657, until his suspension on April 25, 2012 pending Human Resources Review. Colfield was terminated from Safeway on July 15, 2012. (See Exhibit A - Letter to EEOC regarding Colfield's suspension).

## PROTECTIONS AFFORDED MEMBERS OF LOCAL 27 – U.F.C.W.

Mr. Colfield was a member of U.F.C.W. Local 27, subject to the terms of the Local 27 Collective Bargaining Agreement. This collective bargaining agreement specifies the terms and conditions of its members employment and ensures that management will respect their established rights. (See Exhibit 2 - Union Contract)

Further protections against discrimination or improper treatment are outlined in the Collective Bargaining Agreement between Safeway and the United Food and Commercial Workers Union, Local 27. Mr. Colfield's employment is covered by this agreement. This agreement specifically recognizes the responsibility of Safeway and the United Food and Commercial Workers Union, Local 27 to prevent discrimination "against any employee or applicant for employment because of race, color, religious creed, origin, age or sex; and…" This agreement also addresses working conditions, job descriptions, benefits, as well as providing a grievance procedure. The grievance procedure outlines the process an employee should follow if a dispute or disagreement arises concerning disciplinary action or other matters related to the terms and conditions of employment. (See Exhibit 2 - Union Contract)

### SAFEWAY'S WORKPLACE VIOLENCE POLICY

Safeway recognizes its obligation to take all reasonable actions to provide a safe and healthy workplace for all persons in or using its facilities. Acts and/or threats of violence by any employee will not be tolerated and will be grounds for disciplinary action up to and including termination. Acts and/or threats of violence include physical altercations and actions or statements which either directly or indirectly, by words, gestures, symbols, intimidation, or coercion given reasonable cause to believe that the personal safety of the recipient or others may be at imminent risk. In order for Safeway to respond to possible acts or threats of workplace violence any employee or person can report the incident to any member of management. (See Exhibit 3 - Workplace Violence Policy)

### COLFIELD'S EMPLOYMENT AT SAFEWAY
### WAS IMPACTED BY A KNEE INJURY

In March 2010, Colfield sustained an injury to his knee while working at Safeway Store 1994. Due to this injury, Colfield was placed on a Family Medical Leave of absence from June 16, 2010 to September 25, 2010. Colfield was allowed to return to work to a sedentary position with the restriction of working on light duty.

### COLFIELD COMPLAINED TO GRAHAM THAT HE WAS
### NOT ALLOWEFD TO WORK ON SUNDAYS

While on light duty, Colfield contacted Karen Graham, Human Resources Advisor for Store 1459 and complained that he was denied the ability to work on Sundays by Larry Kunze, the Store Manager at Store 1459. Colfield complained that Kunze had allowed two employees to work when they were on workmen's compensation and he felt he was denied his right to work on Sunday. What Colfield did not understand was that the individuals who were working on Sundays in Self Checkout had greater seniority than Colfield.

## COLFIELD FILED A GRIEVANCE WITH THE UNION REQUESTING AN INVESTIGATION INTO HIS ALLEGATIONS OF HARASSMENT

Colfield claimed that in August 2011, Kunze started disrespecting him and trying to get him to quit. Colfield claimed he has had problems with Kunze ever since he had returned to work on light duty in 2010. Graham asked Colfield for specifics. Colfield claimed while he was working at the Self Checkout Counter, Kunze did not want him conversing with other employees at length. Kunze had asked Colfield to please stop carrying on long conversations with employees about personal issues.[1]

During the investigation, Kunze reported that he had asked Colfield not to hold long conversations with other employees. Kunze would stand back and watch employees stop by the Self-Checkout area and converse with Colfield for long periods of time. Colfield also told Graham that the employees would stop and talk about Raven's games and other non-work issues. Kunze told Graham that he informed Colfield that he could talk to other employees on his break or lunch period. Kunze said that he had repeatedly asked Colfield not to involve himself in personal conversations while working in Self Checkout. Kunze said that when he saw employees talking to Colfield, he would ask them to please not congregate at the Self Checkout Counter. Kunze stated the Self-Checkout counter needed undivided attention and if an employee assigned to that area was talking to other employees, they could not be paying attention to the customers.

Colfield admitted to Graham that he was a former Shop Steward and employees would still come to him for advice on union questions. Susie Levin, Local 27 Union Representative, told Graham that she had asked Colfield to stop giving his personal advice to employees and, instead, he should be referring employees to the Shop Steward assigned to that location.

---

[1] On October 27, 2011, Colfield filed a grievance requesting that Safeway schedule a meeting to investigate allegations of harassment. On November 22, 2011, Karen Graham, the Human Resources Advisor for Store 1459, and Suzie Levin, Local 27 Union Representative, met with Colfield to discuss his grievance, filed by UFCW Local 27 Union concerning his allegations of his harassment.

## COLFIELD WAS ACCOMMODATED WHEN HE RETURNED TO WORK

On August 22, 2011, Colfield was released to return to full duty with some restrictions. After an interactive process involving his job analysis, Colfield was granted the following accommodations which he agreed to:

- Restricted from excessive kneeling, bending, stooping, crawling, climbing and squatting.
- No heavy lifting more than 35 pounds.
- Asking for assistance for any functions which required him to kneel, squat, or crawl, climb, bend or stoop.
- A stool would be provided to him for assistance for occasional rest periods.
- Asking for assistance when lifting more than 35 pounds.
- Safeway agreed to try these accommodations for 30 days to determine if they were effective and workable for him and for Safeway.

Colfield was provided these reasonable accommodations by Safeway upon his return to work. During the time since Colfield returned to work there had not been any issues related to Colfield's reasonable accommodation.

## DURING AN HR IN THE HOUSE SESSION COLFIELD COMPLAINED THAT KUNZE WAS MISTREATING OTHER EMPLOYEES AT STORE 1459

On Wednesday, September 28, 2011, Karen Graham, Human Resources Advisor, conducted an "HR In the House" session for employees at Store 1459. At that session, Colfield expressed a concern about Kunze mistreating other employees. After thoroughly reviewing the allegations of Colfield's complaint, Graham did not find any evidence of Kunze mistreating any employees. In fact, Graham noticed Kunze paying close attention to employees interacting with customers and whether or not they were following the Customer Service Rapport Program. As the Store Manager, it is Kunze's job to counsel employees if he feels they are not following the guidelines set by Safeway.



### OUTCOME OF MEETING WITH COLFIELD, KAREN GRAHAM AND SUSIE LEVIN, LOCAL 27 UNION REPRESENTATIVE

A meeting was held on November 11, 2011, with Graham, Levin and Colfield. Levin, the Local 27 Representative, asked Colfield if he wanted to sit down and talk to Kunze. Colfield said that he did not want to meet with Kunze. Colfield asked Graham if he could be transferred to another location in the Produce Department. Graham instructed Colfield to put the transfer request in writing and send it to her. Graham did not receive a transfer from Colfield requesting a transfer to another location.

### COLFIELD RECEIVED A WARNING NOTICE FROM KUNZE FOR FAILING TO PROPERLY EXECUTE THE CUSTOMER SERVICE RAPPORT ATTRIBUTES

On November 30, 2011, through management observation, Colfield was seen failing to follow the best practices for achieving Safeway's Customer Service Rapport Attributes. Colfield failed to ask the customer for their club card and failed to hit the total button on the register. Kunze had explained to employees that asking customers for their club cards would allow Safeway to provide World Class Service to Safeway's Elite shoppers. As a result of this infraction, Colfield was given a verbal warning. (See Exhibit 4 - Verbal Warning) Colfield was not the only employee coached and counseled and written up for lack of performance of the Customer Service Rapport Attribute.

### COLFIELD HELPED HIMSELF TO A PLANET OF THE APES DVD, BEFORE IT WAS OFFICIALLY RELEASED TO THE GENERAL PUBLIC

On December 12, 2011, Colfield asked Betsy Gavigan, the First Assistant Manager, for her keys because he said he had left his Blue Tooth in the Receiving Office. While in the Receiving Office, Colfield saw a box that Colfield claims was slightly opened and he looked inside. Colfield discovered the box contained several Blue Ray "Planet of the Apes" DVD movies. Colfield took the top DVD out of the box and put the rest of the movies back in the box. Colfield returned Gavigan's keys and went to get a Pepsi and a Ginger Ale Soda.

Colfield then went to Self Checkout and proceeded to ring up his merchandise. During the transaction Colfield had problems scanning the DVD and the Pepsi. Tiffany Mertes, the Food Clerk in charge of Self Checkout, came over to assist Colfield with his transaction. Mertes took the DVD out of the Safeway plastic bag and informed Colfield that the DVD had not been rung up. Mertes then scanned the DVD. Colfield questioned Mertes about the price of the DVD. Mertes indicated that she did not know if the DVD had a percentage off. Mertes and Colfield checked the sales paper and stated the DVD might not be on sale right now, maybe tomorrow. Colfield asked Mertes why did the DVD ring up. Mertes replied that she did not know. Colfield told Mertes that he was still going to get the DVD and bring in the receipt to get the discount the following day.

## COLFIELD WAS QUESTIONED BY LOSS PREVENTION AND PLACED ON SUSPENSION FOR POSSIBLE VIOLATION OF COMPANY POLICY

Colfield was questioned by Alan Tlusty, Loss Prevention Investigator, about having purchased a copy of the Blue Ray Planet of the Apes DVD that had not yet been made available for sale. Colfield told Tlusty that he had not seen the label that said "Do Not Sell before December 13, 2011." Colfield told Tlusty that he was aware that new releases come out on Tuesday. Colfield also claimed he had asked Patti Toledo, GMHBC Mgr., when the Planet of the Apes DVD was released for sale. Toledo said she did not know. Tlusty asked Colfield why would he purchase the movie on Monday, if he thought it went on sale on Tuesday? Colfield said he thought it came out on Friday or Saturday, a representation that conflicted with his prior statement to Tlusty. Colfield was then placed on suspension pending Human Resources Review for Violation of the Employee Purchase Policy and Integrity.

## GRAHAM MADE A DECISION ON COLFIELD'S EMPLOYMENT STATUS

Karen Graham, Human Resources Advisor, conducted an investigation based on Colfield's statement and whether Colfield violated any of Safeway's policies. Throughout the investigation, Graham was advised there was no loss to the company for Colfield purchasing the Planet of the Apes DVD prior to its release date of December 13, 2011. However, all merchants are bound by a mutual agreement that when new DVD's are shipped, all stores are to release and sell new DVD's on the same day.

Graham decided to return Colfield to work, but at another location. This decision was consistent with Human Resources past practices. Colfield was transferred on January 1, 2012 to the Owing Mills Safeway Store 1657.

## COLFIELD CLAIMED HARASSMENT A SECOND TIME

After the initial interview with Colfield regarding the alleged violation of company policy, Alan Tlusty prepared an ER-100 discipline memo, which Colfield refused to sign. Tlusty advised Colfied that he could contact Susie Levin, the Local 27 Business Agent. Colfield again alleged that he felt like he was being discriminated against and he was going to contact his lawyer.

## SAFEWAY ATTENDED THE FACT-FINDING CONFERENCE AT THE OFFICE OF EQUAL EMPLOYMENT OPPORTUNITY

On April 24, 2012, Safeway attended the Fact Finding Conference for Colfield. In attendance were Shawn Essien, Investigator for EEOC, Jerome Schaefer, Safeway's Legal Representative, Tim Matthews, Manager of Human Resources and Karen Graham, Human Resources Advisor. This Fact Finding was held because Colfield alleged he was discriminated against based on his race, and retaliated against for opposing discriminatory activity in the workplace.

## COLFIELD ENGAGED IN CONDUCT THAT VIOLATED SAFEWAY'S WORKPLACE VIOLENCE POLICY

On April 25, 2012, Graham received a phone call from Second Assistant Manager, Angela Corprew and (former employee) Second Assistant Manager, Charles (Mike) Deinlein. Corprew told Graham Colfield had entered the manager's office requesting to speak to Tia Person. Person entered the manager's office and Colfield started verbally attacking her in an aggressive and loud tone accusing her of gossiping and talking about him to other employees. Colfield yelled that Person was spreading lies on him. Person responded that Colfield was a trouble maker and kept things going and that's why no one liked him. Colfield continued to yell even louder, so loud that an employee knocked on the door and reported that customers could hear everything that was going on in the office and that they were complaining. Deinlein got up from the computer and asked Colfield several times to calm down and stop yelling. Colfield started to calm down and said he did not want to listen to these lies. While saying this he was pointing his finger in Person's face. Person asked Colfield to please get his finger out of her face.

Colfield threw his hat on the chair and stepped up toward Person, invading her personal space. Deinlein got up from the computer and took his arm and placed it between Person and Colfield. Colfield took Deinlein's arm and aggressively pushed it down. Deinlein stumbled backwards into the file cabinet. Deinlein regained his balance and stood by the file cabinet. Person told Colfield that she was not scared of him and that she was not going to fight him. Colfield began to yell again and proceeded to walk towards the door. Colfield began to walk past Person and stopped and said "I am not going to stand here and listen to your lies, I am leaving." As Colfield started to leave, he bumped Persons with his chest hard enough that she stumbled backwards into a chair. Colfield then left the office. Corprew instructed Person to write a statement and told her that she was not allowed to talk about what happened in the office to anyone. A few minutes later Corprew called Colfield back to the office and informed him that he was being suspended for Violation of the Workplace Violence Policy pending HR Review. Colfield told Corprew, "You know I am not coming back" and exited the office.[2]

## COLFIELD FILED A GRIEVANCE WITH UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 27

On April 30, 2012, Safeway was notified that Colfield had filed a grievance with U.F.C.W. Local 27. On May 9, 2012, Lucy Madert, Labor Relations Manager, received a grievance letter from Local 27 representative Suzi Levin on behalf of Colfield disagreeing with his suspension. Madert and Henry Fajkowski, the Local 27 Representative, met at Safeway's Eastern Division headquarters located at 4551 Forbes Boulevard, Lanham, Maryland for the grievance meeting. Madert and Fajkowksi interviewed Colfield and reviewed Colfield's statement regarding the incident that had occurred on April 25, 2012. (See Exhibit 5 – Copy of Letter Requesting a Grievance)

## EEOC'S DECISION FOR SAFEWAY ON COLFIELD'S ALLEGATION OF RACIAL DISCRIMINATION AND RETALIATION

On July 10, 2012, Safeway received notification from the EEOC regarding Colfield's charge. The EEOC found insufficient evidence to support Colfield's allegation of racial discrimination or retaliation. The EEOC determined that there was No Probable Cause in this case.

---

[2] On May 3, 2012, Tim Matthews sent Ms. Shawn Essien, EEOC a letter informing her that on April 25, 2012, Stephen Colfield was suspended pending review for violation of Safeway's Workplace Violence Policy. (See Exhibit A).



## GRAHAM RECEIVED APPROVAL TO TERMINATE COLFIELD'S EMPLOYMENT

On July 15, 2012, after Human Resources investigation, Tim Matthews gave Karen Graham approval to terminate Colfield's employment for Violation of the Workplace Violence Policy. On July 16, 2012, a termination letter was sent to Colfield informing him that based on the circumstances surrounding the Workplace Violence incident on April 25, 2012, Safeway had made the decision to terminate his employment. (See Exhibit 6 – Colfield Termination Letter).

## LABOR RELATIONS RESPONSE TO COLFIELD'S GRIEVANCE

On July 19, 2012, Lucy Madert, Manager of Labor Relations, denied the grievance on Colfield's reinstatement and request for reimbursement for all lost earnings and benefits.

## SAFEWAY RECEIVED ANOTHER EEOC CHARGE FROM COLFIELD ALLEGING RETALIATION

On July 27, 2012, Safeway received another EEOC Charge from Colfield alleging that Safeway suspended him the day after attending the fact finding meeting.

As explained earlier, Colfield had involved himself in an incident with another employee regarding gossip and unproven accusations. This incident resulted in Colfield yelling at Person, violating her personal space, pointing his finger in her face and ultimately shoving her with his shoulder and causing her to fall backwards into a chair. Colfield also aggressively pushed away Deinlein's arm that was placed in between Colfield and Person. When Colfield pushed Deinlein's arm away, Deinlein stumbled backwards into the file cabinet. Deinlein regained his balance and stood by the file cabinet. Colfield's demeanor had become even more hostile. Colfield was then suspended for a Violation of the Workplace Violence Policy pending HR Review and was approved for termination.in accordance with Safeway's past practices.




## **CONCLUSION**

Colfield's allegations that Safeway discriminated against him based on his race and retaliated against him have no merit. Colfield complained about how Store Manager, Larry Kunze treated employees. Colfield and a few other employees failed to follow the Customer Service Rapport program. This caused Kunze to focus more on coaching the employees who failed to follow his instruction. This was not harassment or retaliation. Colfield complained quite a bit about Kunze, but Colfield's complaints were baseless.

Colfield's integrity was questioned when he was suspended for violating the Employee Purchase Policy when he purchased the Blue Ray DVD, Planet of the Apes before it was available for sale. Safeway reviewed all the facts in this case and felt it was justifiable to return Colfield to work with no back pay, transfer to another location and final warning for Violation of Safeway's Employee Purchase Policy and Lack of Integrity. Colfield was given another chance and he failed.

On January 1, 2012, when Colfield was approved to transfer to Store 1657, as part of the disciplinary process for Colfield Violating Safeway's Employee Purchase Policy, Graham thought that this transfer would be a good for Colfield. Graham felt that Colfield would be given another opportunity to become a better employee. Instead, within three months Colfield had involved himself in violating Safeway's zero tolerance policy for Workplace Violence.

Colfield did not have to confront Person in an aggressive and hostile manner. He could have requested a meeting with management and Person. Being a former Shop Steward, Colfield could have exercised his union rights by filing a grievance against Person if he so chose. Colfield decided to handle the issue on his own by approaching Person in a loud, derogatory, aggressive and hostile manner. In the process, he shoved two employees -- a co-worker and an Assistant Manager -- causing them to fall backwards and lose their footing. Colfield failed to handle his concerns in a professional manner which resulted in his suspension and termination from Safeway for Violation of the Workplace Violence Policy. The termination was consistent with consequences for past violations of the policy.

On May 9, 2012, Safeway received a letter from UFCW Local 27 grieving the suspension and termination on behalf of Colfield. On July 19, 2012, Lucy Madert, Safeway's Labor Relations Manager for the Eastern Division sent a letter to Local 27 informing them that she had reviewed the matter and determined the suspension was appropriate. Therefore, the grievance was respectfully denied. (See Exhibit 7 - Grievance Denial Letter)

Safeway was consistent in the application of its policies and investigated all of Colfield's complaints. Colfield complained to management about many things. Safeway's investigated all of these complaints and determined they had no validity. Safeway finds no basis for Colfield's claim for retaliation and seeks a "no cause" finding in this case.