# IN THE UNITED STATES DISCTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **STEPHEN COLFIELD** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | **Case No.: 1:12-cv-03544-WMN** |
| | * | |
| **SAFEWAY INC.** | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S CONSOLIDATED MOTIONS *IN LIMINE*

Respectfully submitted

/s/ *George A. Rose*
_____
George A. Rose, Esquire, #26086
John J. Leppler, Esquire, #19736
Rose Law Firm, LLC
200 E. Lexington St., Suite 1305
Baltimore, Maryland 21202
Telephone: 410-727-7555
Facsimile: 443-320-0962
Email: grose@roselawfirm.net
Email: attorneyleppler@roselawfirm.net

## <u>TABLE OF CONTENTS FOR PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S CONSOLIDATED MOTIONS *IN LIMINE*</u>

I.      BACKGROUND…………………………………………………………..4

II.     THE LAW PERTINENT TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S CONSOLIDATED MOTIONS *IN LIMINE*……………………..6

     A.    Out-of-court statements made by an out-of-declarant that are
non-hearsay pursuant to Fed. R. Evid. 801 and the relevant law………………..7

     B.    Out-of-court statements made by an out-of-court declarant
That are otherwise hearsay are admissible as an exception to the
hearsay rule pursuant to Fed. R. Evid. 803 and the relevant law……………......8

III.    PLAINTIFF'S RESPONSES IN OPPOSITION TO
DEFENDANT'S MOTIONS *IN LIMINE*…………………………………….................9

     A.    Response In Opposition to Defendant's First Motion
*In Limine*: The Court should permit testimony and
written statements purportedly made by Defendant Safeway's
actual and/or apparent agent, servant, and/or employee at
all times pertinent hereto, Mr. Jimmy Bennett…………………………………..9

          1.    Mr. Bennett's Statements regarding his intention
and directive to fire Plaintiff from his employment
with Defendant Safeway are non-hearsay as a party
admission and therefore admissible………………………………….......9

          2.    Mr. Deinlein's Statements related to Mr. Jimmy
Bennett are non-hearsay and therefore admissible
at trial through the testimony of Plaintiff's proffered
witness, Mr. Tony Mack…………………………………………………12

          3.    Mr. Bennett's purported statements are highly relevant to
Plaintiff's retaliation claim and its probative value shows
that this evidence is admissible at trial under a
Rule 403 analysis. ……………………………………………………13

     B.    Response In Opposition to Defendant's Second Motion *In Limine*:
The Court should permit testimony and other evidence
regarding Plaintiff's allegations of race discrimination…………………………14

          1.    Allegations that Larry Kunze denied Plaintiff
sedentary work and refused to cooperate with
his light duty status……………………………………………………......14

          2.    Allegations that Mr. Kunze would not allow Plaintiff
to work Sundays while Plaintiff was on light duty in 2010.

          3.    Allegations that Mr. Kunze assigned Plaintiff……………………..…….15
undesirable tasks, such as cleaning up dead mice.

          4.    Allegations that Mr. Kunze restricted Plaintiff's
interactions with Plaintiff's co-workers in 2011…………………………16

          5.    Allegations that Mr. Kunze attempted to "demean,
intimidate, and agitate Plaintiff into insubordinate actions………………17

          6.    Allegations that Mr. Kunze gave Plaintiff a written
warning for violated Safeway's "Rapport Program" in

September 2011……………………………………………….……17

       7.    Allegations that Caucasian employee Christine Haley
            checked out her sister in violation of Safeway's
            Employee Purchase Policy, but was not disciplined…………….……18

       8.    Allegations that Caucasian employees, including
            Marsha Dichara, Roger Bourn, Gary Hein,
            Aaron LeKarz, Lydia Cole, and Glenn Carl………………………….…..20

       9.    Allegations that Caucasian employees, including
            Sean Ford, Brittney Putresk, and Salvati, violated
            Safeway's Employee Purchase Policy, but were not suspended……….…21

    C.    Response to Defendant's Third Motion *In Limine*: The Court
        should permit references to allegations and events prior to
        January, 2011……………………………………………………...……..22

    D.    Response to Defendant's Fourth Motion *In Limine*:
        The Court should permit references to grievances Plaintiff
        filed with the Union (a/k/a U.C.F.W Local 27), on his own
        behalf or on behalf of other employees, that do not relate
        to alleged race discrimination…………………………………………………22

    E.    Response to Defendant's Fifth Motion *In Limine*: The Court
        should permit evidence of purported comparators involved
        in dissimilar misconduct……………………………………………………23

    F.    Response to Defendant's Sixth Motion *In Limine*: The Court
        should permit emails to Jackson Lewis P.C. and permit
        Plaintiff to call Defendant Safeway's current and former counsel
        as witnesses at trial……………………………………………………………25

    G.    Response to Defendant's Seventh Motion *In Limine*: The Court
        should permit Plaintiff to call Plaintiff's treating licensed certified
        clinical social worker, Ms. Terryle Williams, LCSW-C, as an expert
        witness at trial……………………………………………………...………..27

    H.    Response to Defendant's Eighth Motion *In Limine*: The Court
        should permit Plaintiff to call witnesses not specifically identified on
        Plaintiff's Witness List……………………………………………...………31

    I.    Response to Defendant's Ninth Motion *In Limine*: The Court
        should permit evidence related to Plaintiff's claim that
        the Union (a/k/a U.C.F.W Local 27) instructed him to stop
        assisting co-workers…………………………………………………..…………31

    J.    Response to Defendant's Tenth Motion *In Limine*: The Court
        should permit evidence related to Plaintiff's claim for back pay and
        front pay.. …………………………………………….……….…………...32

IV.    CONCLUSION………………………………………….…………………33

**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **STEPHEN COLFIELD** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | **Case No.: 1:12-cv-03544-WMN** |
| | * | |
| **SAFEWAY INC.** | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S CONSOLIDATED MOTIONS *IN LIMINE*

Plaintiff, Stephen Colfield, by and through his attorneys, George A. Rose, Esquire, John J. Leppler, Esquire, and the law firm, Rose Law Firm, LLC, and pursuant to the Court's Order and the local rules, hereby submits Plaintiff's Response In Opposition To Defendant's Consolidated Motions *In Limine*, and in support thereof states:

## I.    BACKGROUND

This is an employment discrimination action where Plaintiff Stephen Colfield (hereinafter "Plaintiff"), an African-American and long-time supermarket employee, brought a retaliation claim violation of Title VII against his former employer and the Defendant, Safeway Inc. (hereinafter "Defendant"). Defendant targeted Plaintiff by consistently taking adverse actions against him because of Plaintiff's continuous engagement in protected activity. Pursuant to the Court's 03/30/2016 ruling, (Dkt #114). the Court identified four categories of adverse actions Defendant took against Plaintiff because of Plaintiff's continuous engagement in protected activity. The four categories are;

1. Plaintiff's denial of work hours on Sundays while he was on light duty by his supervisor Mr. Larry Kunze in 2010, where two of Plaintiff's Caucasian co-workers, who were food clerks and/or cashiers, and who were also on light duty status, Tiffany Mertes and Crystal Adams, were allowed to work hours on Sundays;

2. After Plaintiff complained to Defendant's HR manager, Ms. Karen Graham that he was denied work hours on Sundays while on light duty status but his Caucasian co-workers who were on light duty status were given hours on Sundays, Plaintiff's supervisor Mr. Kunze assigned him demeaning tasks (cleaning up dead mice and cleaning up the trash compactor), and substantially limited Plaintiff's interactions with his co-workers;

3. After Plaintiff filed his charge of race discrimination and retaliation against Defendant on October 15, 2011, and after Plaintiff complained to Ms. Graham that Mr. Kunze was retaliating against him, on December 13, 2013, Defendant indicated that Plaintiff allegedly violated Defendant's Employee Purchase Policy when he purchased a DVD, one day before sale (purchase on 12/12/2011) and in fact paid more for the DVD than what the DVD's sale price was one day later (12/13/2011); and

4. The day after Plaintiff had a fact-finding meeting at the EEOC with Ms. Karen Graham, Plaintiff's Union's representative, Susie Levin, a co-worker Plaintiff assisted in filing his own EEOC charge for religious discrimination against Defendant, Mr. Mark Robbins, and other Defendant supervisors and/or managers, Plaintiff was suspended without pay for allegedly violating Defendant's workplace violence policy on 04/25/2012. Plaintiff was ultimately terminated from Defendant on 07/16/2012, and Plaintiff's alleged violation of the workplace violence policy was the basis to support his termination.

The reasons stated below will show that this Honorable Court should deny Defendant's Consolidated Motions In *Limine*.

## II.  THE LAW PERTINENT TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S CONSOLIDATED MOTIONS *IN LIMINE*

"Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Louzon v. Ford Motor Co*., 718 F.3d 556, 561 (6th Cir.2013) (quoting Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir.1990)); *see also* Ihnken v. Jenkins, CIV. CCB-11-3508, 2015 WL 590562, at *1 (D. Md. Feb. 11, 2015). The purpose of a motion *in limine* is to give the trial court notice of the movant's position as to avoid the introduction of irrelevant or damaging evidence which may irretrievably infect the fairness of trial. Lai v. Sagle, 373 Md. 306, 317 (2003). Evidence that is not relevant is not admissible. *See* Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 541 (D. Md. 2007)(citing

Fed. R. Evid. 402)). Moreover, relevant evidence may be excluded if the trial court, in its discretion, finds its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* United States v. Williams, 445 F.3d 724, 730 (4th Cir. 2006)(citing Fed. R. Evid. 403)). Evidence may be excluded if it is incompetent, irrelevant, immaterial, privileged, or otherwise inadmissible. *See generally* Montana v. Egelhoff, 518 U.S. 37, 42, 116 S. Ct. 2013, 2017, 135 L. Ed. 2d 361 (1996).

**A.** **Out-of-court statements made by an out-of-court declarant that are non-hearsay pursuant to Fed R. Evid. 801 and the relevant law**.

Out-of-court statements made by an out-of-court declarant that are admissible as non-hearsay pursuant to Fed. R. Evid. 801 and the relevant law include the following among others;

- Non-assertive conduct. *See* United States v. Jones, 542 F.2d 186 (4th Cir. 1976);

- Statement asserted that is not offered for the truth. *See* Williams v. Illinois, 132 S. Ct. 2221, 2240, 183 L. Ed. 2d 89 (2012);

- Statement asserted to show prior identification. *See* United States v. Owens, 484 U.S. 554, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988);

- Statement asserted to establish proof of knowledge. *See* United States v. Guerrero-Damian, 241 Fed. Appx. 171 (4th Cir. 2007)( citing United States v. Safari, 849 F.2d 891, 894 (4th Cir.1988);

- Statement asserted to show proof of circumstantial evidence of the listener's statement mind. *See* Id.;

- Statement asserted to prove the effect the statement had on the listener at the time the statement was made. *See* United States v. Guerrero-Damian, 241 Fed. Appx. 171 (4th Cir. 2007)( citing United States v. Safari, 849 F.2d 891, 894 (4th Cir.1988);

- Prior inconsistent statements made under oath. *See* Tome v. United States, 513 U.S. 150, 157, 115 S. Ct. 696, 701, 130 L. Ed. 2d 574 (1995); *See* Fed R. Evid. 801; (7) prior consistent statements used to rehabilitate a witness, Tome v. United States, 513 U.S. 150, 157, 115 S. Ct. 696, 701, 130 L. Ed. 2d 574 (1995); *See* Fed R. Evid. 801;

- Words or documents that have independent legal significance. *See* <u>S Int'l Services, Inc. v. Kousa Int'l, LLC</u>, CIV.A. RDB-12-2525, 2014 WL 1745004 (D. Md. May 1, 2014); and

- Admission made by a party opponent. *See* <u>Tome v. United States</u>, 513 U.S. 150, 157, 115 S. Ct. 696, 701, 130 L. Ed. 2d 574 (1995)(*See* Fed R. Evid. 801) which includes, among others: (a) an admission by the out-of-court declarant who was acting within his capacity as an actual and/or apparent agent, servant, and/or employee of the party opponent and acting within the scope of his or her employment. *See* <u>E.E.O.C. v. Watergate at Landmark Condo.</u>, 24 F.3d 635, 638 (4th Cir. 1994)(citing Fed. R. Evid. 801(d)(2)(D)).

**B.** **<u>Out-of-court statements made by an out-of-court declarant that are otherwise hearsay are admissible as an exception to the hearsay rule pursuant to Fed. R. Evid. 803 and the relevant law</u>**.[1]

Out-of-court statements made by an out-of-court declarant that are otherwise hearsay but are admissible as an exception to the hearsay rule pursuant to Fed. R. Civ. Evid. 803 and the relevant law include the following among others:

- Prior inconsistent statements where one of the statements was not made under oath. *See* <u>United States v. Ince</u>, 21 F.3d 576, 579 (4th Cir. 1994);

- Prior consistent statements that are used for impeachment of the witness only and is not admitted as substantive evidence. *See* <u>United States v. Hedgepeth</u>, 418 F.3d 411 (4th Cir. 2005);

- An excited utterance. *See* <u>United States v. James</u>, 164 F. Supp. 2d 718, 2001 WL 1221673 (D. Md. 2001)(*See also* <u>United States v. Hines</u>, 27 Fed. Appx. 159, 2001 WL 1354815 (4th Cir. 2001);

- A present sense impression. *See* <u>United States v. Hines</u>, 27 Fed. Appx. 159, 2001 WL 1354815 (4th Cir. 2001);

- Records that are kept in the regular course of business. *See* <u>Doali-Miller v. SuperValu, Inc.</u>, 855 F. Supp. 2d 510, 2012 WL 1223726 (D. Md. 2012);

- Statement made by the out-of-court declarant which was made within the course of the declarant's medical diagnosis and/or care and treatment by the declarant's health care provider. *See* <u>Doali-Miller v. SuperValu, Inc.</u>, 855 F. Supp. 2d 510, 2012 WL 1223726 (D. Md. 2012); and

- The residual exception to hearsay rule. *See* <u>United States v. Dunford</u>, 148 F.3d 385, 393 (4th Cir. 1998)(citing <u>Tome v. United States</u>, 513 U.S. 150, 157, 115 S. Ct. 696, 701, 130

---

[1] The following list of out-of-court statements comply with Fed. R. Evid. 803.

L. Ed. 2d 574 (1995)("As the Supreme Court has noted, this residual exception to the hearsay rule exists for the circumstance "[w]hen a party seeks to introduce out-of-court statements that contain strong circumstantial indicia of reliability, that are highly probative on the material questions at trial, and that are better than other evidence otherwise available."

## III. PLAINTIFF'S RESPONSES IN OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE*

### A. Response In Opposition to Defendant's First Motion *In Limine*: The Court should permit testimony and written statements purportedly made by Defendant Safeway's actual and/or apparent agent, servant, and/or employee at all times pertinent hereto, Mr. Jimmy Bennett.

#### 1. Mr. Bennett's Statements regarding his intention and directive to fire Plaintiff from his employment with Defendant Safeway are non-hearsay as a party admission and therefore admissible.

Mr. Jimmy Bennett was at all times pertinent hereto an actual and/or apparent agent, servant, and/or employee of Defendant Safeway and was the store manager and supervisor of Defendant Safeway's Owings Mills location.[2] Mr. Bennett was the supervisor of Plaintiff's coworker and Defendant employee, Ms. Maria Jones, who is intended to be called as a witness as trial to testify to her reaction to Mr. Bennett stating to her that he was sent to Defendant Safeway's Owings Mills location and directed to terminate Plaintiff from his employment with Defendant. *See* Id.

Further, Defendant's case law to support its contention Mr. Bennett's statements referenced above are not party admissions is inapplicable to this case. In Mansell v. Toys "R" Us., Inc., 673 F. Supp. 2d 407, 419 (D. Md. 2009), a business that provided manpower for loading and unloading trailers to freight handling facilities and its sole proprietor, sued a worldwide retail store chain for race discrimination under §1981, breach of contract and tortious interference of contract. One of the major issues in this case was which party terminated the business relationship (the plaintiff

---

[2] *See* Plaintiff's 08/24/2015 Aff'd ¶21, attached as **Exhibit 1**.

sent a proposal to the defendant, the defendant thereafter orally accepted the proposed pricing schedule but disagreed as to the payment schedule and doing business with the plaintiff's employees). The Court ultimately ruled the plaintiff's proposed statements of a party admission were hearsay because the statements were not a party admission, but hearsay because the plaintiff would be testifying about statements management may have said to two employees who thereafter relayed the statements to the plaintiff, and because the two employees had no decision-making power. Id. at 419. In its reasoning, the Court cited Fed. R. Evid. 801, which addresses statements that are not hearsay as they are party opponent admissions, and stated,

> Rule 801(d)(2)(D) states that out of court statements offered for the truth of the matter asserted are non-hearsay admissions by a party-opponent if offered against a party and made "**by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship**".

Id. at 419. (emphasis added).

In <u>Fairchild v. All American Check Cashing, Inc</u>., a case that is not in this jurisdiction and therefore not binding authority, a female employee (plaintiff) brought a Title VII pregnancy discrimination claim under the Fair Labor Standards Act (FLSA) against her employer. 815 F.3d 959 (5th Cir. 2016). Pertinent to this Response In Opposition, the Fairchild Court excluded a statement made by the plaintiff's direct supervisor that, "[Fairchild's] pregnancy was related to her termination" as the Court ruled it is hearsay. Moreover, the supervisor in Fairchild was not involved in the termination decision, thus, the statement did not concern a matter within the scope of the supervisor's employment. Id. at 967. Furthermore, the statement by the supervisor, was the sole basis for the Plaintiff's claim of discrimination. Id. at 966.

In <u>Kristin Jaramillo v. Colorado Judicial Department</u>, which again is not a case in this jurisdiction and therefore not binding authority, a female probation officer (plaintiff) who was

denied promotion brought a Title VII sex discrimination action against the state judicial department (defendant). 427 F.3d 1303 (10th Cir. 2005), as modified on denial of reh'g (Dec. 20, 2005). In Jaramillo, the plaintiff was seeking a promotion, and within the application pool, among her competing candidates, was the individual, Mr. Brian Sandoval. Id. Pertinent to this Response in Opposition, the Court excluded the statements made by Mr. Sandoval on the grounds of hearsay and did not agree with the plaintiff's argument that Mr. Sandoval statements were a party opponent admission. Id. at 1314. However, Mr. Sandoval was, like plaintiff, one of defendant's employees who was competing with plaintiff, in an application pool, for the same position that was considered a promotion. Thus, Mr. Sandoval was not in charge of the hiring and promotion process at it relates to the Jaramillo plaintiff's claims against the defendant.

In Hill v. Spiegel, Inc., which again is not a case in this jurisdiction and therefore not binding authority, a former employee (plaintiff) brought an age discrimination claim under the Age Discrimination in Employment Act (ADEA). 708 F.2d 233 (6th Cir. 1983). The Hill Court ruled that statements by the plaintiff's managers was hearsay, and in its reasoning, the Court sated,

> Spiegel [, the plaintiff] submits that there was no evidence that these declarants, as to whose comments Baker testified, were involved in the decision to discharge Emery Hill. Spiegel argues, and we agree, that since there was no evidence that either Williams, Seligman, or Phillips had any involvement in the decision to discharge Hill, there was no basis for finding that the statements of these declarants concerned "a matter within the scope of [their] agency." Rule 801(d)(2)(D).

Hill, 708 F.2d 233 at 237.

Continuing, the Court stated,

> We recognize that under this Rule, as is pointed out in the Notes of the Advisory Committee, it is not necessary to show that the declarant had authority to make the statement. But it is necessary, we repeat, to show, to support admissibility, that the content of the declarant's statement concerned a matter within the scope of his agency.

Id. at 237.

Here, Mr. Bennett was the store manager of Defendant's Owings Mills location, Maria Jones's supervisor, and he was directed by Defendant's management to terminate Plaintiff's employment with it.[3] There is no question that Mr. Bennett was empowered to terminate Plaintiff from his employment with Defendant and therefore was in a management role as Defendant's employee at all times pertinent hereto. *See* Id. Mr. Bennett's statements will be proffered at trial through the testimony of Maria Jones, among other witnesses including Plaintiff. Defendant's counsel will have a fair opportunity to cross examine Plaintiff's witnesses regarding Mr. Bennett's statements. Mr. Bennett was acting with the scope of his employment at Defendant. *See* Id. For these reasons, Mr. Bennett's statements related to Plaintiff's employment at Defendant are admissible at trial because they are not hearsay.

        **2.**       **Mr. Deinlein's Statements related to Mr. Jimmy Bennett are non-hearsay and therefore admissible at trial through the testimony of Plaintiff's proffered witness, Mr. Tony Mack.**

Mr. Deinlein's statements regarding Mr. Bennett's statements that Plaintiff is a "problem" employee and about "the plan was to pick at every little thing that the employee would do that could be considered against policy…" (the 'employee' being Plaintiff) and Mr. Deinlien's statement to Plaintiff on April 11, 2016 that Mr. Bennett planned to fire Plaintiff that week, are non-hearsay because these statements were made to prove the effect on the listener of these statements when Mr. Deinlein asserted them, to Mr. Tony Mack and the Plaintiff.[4] Mr. Deinlein's statement to Tony Mack was made during a phone conversation, with Mr. Deinlein about Mr. Colfield shortly after Mr. Mack was told by Mr. Bennett himself, that Mr. Bennett knew about

---

[3] *See* Plaintiff's 08/24/2015 Aff'd ¶21, attached hereto as **Exhibit 1**.
[4] *See* Tony Mack's 08/24/2015 Aff'd ¶4, attached as **Exhibit 2**.

Plaintiff's EEOC charge based on race discrimination and retaliation against Safeway and calling Plaintiff a "troublemaker."[5] After Mr. Mack disclosed this information to Mr. Deinlein over the phone, Mr. Deinlein asserted the above statements to Mr. Mack during this telephone conversation. Given these circumstances and how Mr. Mack first knew of Mr. Deinlein's statements about Mr. Bennett, Mr. Deinlein's statements about Mr. Bennett are non- hearsay; Mr. Mack's proof of knowledge of Mr. Deinlein's statements and the effect Mr. Deinlein's statements had on Mr. Mack when Mr. Mack called Mr. Deinlein to find out if Mr. Deinlein knew about Mr. Bennett's directive to terminate Plaintiff's employment with Defendant. For these reasons, Mr. Deinlein's statements regarding Mr. Bennett are non-hearsay and therefore admissible at trial. Furthermore, Mr. Deinlein's statement to Mr. Colfield on April 11, 2016, that Jimmy Bennett was planning on firing Plaintiff that week, is clearly non hearsay, been offer to show knowledge and effect on the listener.

Additionally, Don Pardoe's statements, told to Mr. Colfield on April 11, 2012, that Jimmy Bennett planned to fire Mr. Colfield during that week, is not hearsay. At the time, Mr. Pardo was Plaintiff's co-workers and union shop steward at Defendant Owings Mills store. Mr. Pardoe's statements regarding Mr. Bennett fall under the residual exception to hearsay. Mr. Pardoe's statements will be proffered by testimony at trial from <u>Plaintiff</u>, who have personal knowledge of Mr. Pardoe's statements regarding Mr. Bennett.[6] For these reasons, Mr. Pardoe's statements are either admissible as non-hearsay based on Plaintiff's proof of knowledge of Mr. Pardoe's statements and/or admissible under the residual exception to the hearsay rule and therefore admissible at trial.

> **3.** **Mr. Bennett's purported statements are highly relevant to Plaintiff's retaliation claim and its probative value shows that this evidence is admissible at trial under a Rule 403 analysis.**

---

[5] *See* Id at ¶3, attached as **Exhibit 2**.
[6] *See* Plaintiff's 08/24/2015 Aff'd ¶24, attached as **Exhibit 1**

Mr. Bennett's purported statements are highly relevant to Plaintiff's retaliation claim, given that Mr. Bennett had knowledge of Plaintiff's filed EEOC charge for race discrimination and retaliation against Defendant, which Plaintiff filed on 10/15/2011 and Mr. Bennett was directed to terminate Plaintiff from his employment with Defendant in 2012.[7] Finally, Plaintiff has knowledge that Mr. Bennett was the store manager of Defendant Safeway's Owings Mills store and as the store manager at this location was directed to fire him from Defendant.[8]

Finally, since Plaintiff states his knowledge of Mr. Bennett's statements showing Mr. Bennett's intention to terminate Plaintiff,[9] Defendant's counsel will have ample opportunity(s) to cross-examine Plaintiff regarding his knowledge and/or memory of Mr. Bennett's statements at trial. For these reasons, Mr. Bennett's statements are highly relevant to Plaintiff's retaliation claim against Defendant Safeway and therefore admissible at trial under Fed. R. Evid. 403.

**B.** **Response In Opposition to Defendant's Second Motion *In Limine*: The Court should permit testimony and other evidence regarding Plaintiff's allegations of race discrimination**.

Defendant's counsel stated numerous allegations that support Plaintiff's claims of race discrimination are inadmissible at trial under Rule 402, and even if relevant, are inadmissible under a Rule 403 analysis.[10] However, the nine (9) sets of allegations Defendant seeks to exclude will be addressed separately below. All nine sets of allegations are admissible at trial because; (1) the allegations are relevant to Plaintiff's retaliation claim against Defendant; and (2) the probative value of the allegations is not substantially outweighed by its danger of unfair prejudice (*See* Fed. R. Evid. 402; *see also* Fed. R. Evid. 403).

---

[7] *See* Plaintiff's 08/24/2015 Aff'd ¶21 and ¶16, attached as **Exhibit 1**; *see also* Plaintiff's 10/15/2011 filed EEOC charge, attached as **Exhibit 3**.
[8] *See* Plaintiff's 08/24/2015 Aff'd ¶21, attached as **Exhibit 1**.
[9] *See* Id., attached as **Exhibit 1**.
[10] *See* Def.'s Mtn. P. 7.

1. **Allegations that Larry Kunze denied Plaintiff sedentary work and refused to cooperate with his light duty status**.

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant. Among other protected activity Plaintiff engaged in while employed at Defendant, in January 2011, Plaintiff complained to Defendant's HR manager, Karen Graham, that Plaintiff's Caucasian supervisor denied him the opportunity to work on Sundays (the day of the week where employees were given overtime hours) on Sundays due to his light duty status, while Mr. Kuntz allowed Plaintiff's Caucasian co-workers who were also on light duty status, Tiffani Mertes and Crystal Adams to work on Sundays.[11] Thereafter, because Plaintiff complained to Karen Graham regarding Mr. Kunze's denial of Plaintiff allowed to work on Sundays, Mr. Kunze began to target Plaintiff which included among other things denying Plaintiff's sedentary work (including directing Plaintiff to clean up dead mice in the store), and Mr. Kunze's refusal to cooperate and assign Plaintiff tasks that were consistent with Plaintiff's light duty status (i.e. heavy lifting objects and constant bending).[12] Additionally, these allegations were a part of Plaintiff's October 2011 EEOC charge of discrimination against Safeway. For these reasons, these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

2. **Allegations that Mr. Kunze would not allow Plaintiff to work Sundays while Plaintiff was on light duty in 2010.**

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant. Among other protected activity Plaintiff engaged in while employed at Defendant, starting in January 2011, Plaintiff complained to Defendant's HR manager, Karen Graham, that Plaintiff's supervisor Mr. Larry Kunze denied

---

[11] *See* Plaintiff's 08/24/2015 Aff'd ¶12, attached as **Exhibit** 1
[12] *See* Id., attached as **Exhibit 1.**

him the opportunity to work on Sundays (the day of the week where employees were given overtime hours) due to his light duty status, while Mr. Kunze allowed Plaintiff's Caucasian co-workers who were also on light duty status, Tiffani Mertes and Crystal Adams to work on Sundays.[13] Plaintiff first met with Karen Graham about these allegations on September 28, 2011, after Plaintiff had filed a grievance on September 21, 2011 about these said allegations. The day after the September 28, 2011 meeting, Plaintiff alleged that he was given a written disciplinary warning by Mr. Kunze for alledgly failing to hit the total button on a transaction. These factual allegations were part of Plaintiff's October 2015 EEOC charge involving retaliation. For these reasons, these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

### 3. Allegations that Mr. Kunze assigned Plaintiff undesirable tasks, such as cleaning up dead mice.

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant, as set forth in Plaintiff's October 15, 2011 EEOC Charge of Discrimination against Defendant. Plaintiff alleged that Mr. Kunze began giving Plaintiff assignment to clean up dead mice in the store after Plaintiff began complaining about been denied opportunities to work overtime on Sundays. In August 2011, once Plaintiff returned to full duty status and off of light duty, Mr. Kunze targeted Plaintiff for these undesirable tasks of cleaning up dead mice from around the store and cleaning up filthy trash from the trash compactor and trash located outside of the store.[14] Again, the Court even states that these allegations are within the purview of Plaintiff's engagement in protected activity, in multiple ways, as the factual basis for Plaintiff's retaliation claim against Defendant.[15] Furthermore, these factual

---

[13] *See* Id. at ¶12, attached as **Exhibit 1**.
[14] *See* Id. at ¶13, attached as **Exhibit 1**
[15] *See* Dkt. #114 at p. 2.

allegations were part of Plaintiff's October 2015 EEOC charge against Safeway, which included retaliation. For these reasons, these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

**4.     Allegations that Mr. Kunze restricted Plaintiff's interactions with Plaintiff's co-workers in 2011**.

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant. In August 2011, once Plaintiff returned to full duty status and off light duty, Mr. Kunze assigned Plaintiff the undesirable tasks of cleaning up dead mice from around the store and cleaning up filthy trash from the trash compactor and trash located outside of the store.[16] Thereafter, in September, 2011, Plaintiff complained to Defendant Safeway's Human Resources representative, Karen Graham, regarding Mr. Kunze's discriminatory harassment (the demeaning assignments Mr. Kunze assigned to Plaintiff stated above).[17] Further, Plaintiff indicated this to be part of his basis for his 10/15/2015 EEOC charge for race discrimination and retaliation against Defendant Safeway.[18] For these reasons, these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

**5.     Allegations that Mr. Kunze attempted to "demean, intimidate, and agitate Plaintiff into insubordinate actions.**

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant. In August 2011, once Plaintiff returned to full duty status from light duty status at work, Mr. Kunze assigned Plaintiff the undesirable tasks of cleaning up dead mice from around the store and cleaning up filthy trash from

---

[16] *See* Plaintiff's 08/24/2015 Aff'd ¶11, attached as **Exhibit 1**.
[17] *See* Id. at ¶14, attached as **Exhibit 1**.
[18] *See* Plaintiff's 10/15/2011 EEOC charge, attached as **Exhibit 3**.

the trash compactor and trash located outside of the store.[19] Again, the Court even states that these allegations are within the purview of Plaintiff's engagement in protected activity, in multiple ways, as the factual basis for Plaintiff's retaliation claim against Defendant.[20] For these reasons, these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

### 6. Allegations that Mr. Kunze gave Plaintiff a written warning for violated Safeway's "Rapport Program" in September 2011.

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant. As the Court recognizes Plaintiff's alleged violation of Defendant's Club Card policy may be causally related to Plaintiff's protected activity including Plaintiff's internal complaint to Karen Graham regarding Mr. Kunze's denial of work on Sundays while Plaintiff was on light duty status.[21] For these reasons, these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

### 7. Allegations that Caucasian employee Christine Haley checked out her sister in violation of Safeway's Employee Purchase Policy, but was not disciplined.

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant. Plaintiff's initial protected activity included, among other things; (1) Plaintiff's complaint to Ms. Karen Graham regarding Plaintiff's denial of work hours on Sunday while he was on light duty status, but two of Plaintiff's Caucasian

---

[19] *See* Plaintiff's 08/24/2015 Aff'd ¶13, attached as **Exhibit 1**
[20] *See* Dkt. #114 at p. 2.
[21] *See* Dkt. #114 at p. 3 - (citing Kunze Aff'd at ¶10); *see also* Karen Graham Dep. p. 50:1-22, attached as **Exhibit 4**.

co-workers who were also on light duty worked on Sundays; and (2) Plaintiff's 10/5/2011 filed EEOC charge against Defendant based on race discrimination and retaliation.[22]

The allegations of Defendant's Caucasian employee Christine Haley who checked out her sister and thus violated Defendant's Employee Purchase Policy,[23] is admissible as comparator evidence. *See* <u>Lewis v. Gibson</u>, 621 Fed. Appx. 163 (4th Cir. 2015), <u>cert. denied sub nom.</u> <u>Lewis v. McDonald</u>, 136 S. Ct. 840, 193 L. Ed. 2d 744 (2016). In <u>Lewis</u>, a federal employee ("plaintiff") brought action against the Department of Veteran Affairs ("defendant"), and asserted two claims against the defendant; a failure to accommodate claim for his disability and a retaliation claim. Related to the plaintiff's retaliation claim, <u>the plaintiff claimed that the defendant retaliated against him for filing an EEOC complaint</u>. *See* <u>Lewis</u>, 621 Fed. Appx 163 at 165. This was the plaintiff's factual basis for his retaliation claim and the Court stated that for the plaintiff to prevail on his retaliation claim, the plaintiff must either provide sufficient direct and indirect evidence of retaliation, or proceed under the <u>McDonnell Douglas</u> framework. The <u>Lewis</u> Court ultimately ruled there was insufficient support for the plaintiff's retaliation claim. The Court noted the plaintiff offered no direct evidence of retaliatory motive, the temporal proximity between the plaintiff's protected activity (EEOC complaint) and termination is insufficient to 'create a genuine issue of material fact', and the defendant cited the reason of the plaintiff's termination as being performance, which the Court found was a legitimate, non-discriminatory reason for termination. *See* <u>Lewis</u>, 621 Fed. Appx. 163 at 165-66.

---

[22] *See* Plaintiff's 08/24/2015 Aff'd ¶12, attached as **Exhibit 1**; *see also* Plaintiff's 10/15/2011 filed EEOC charge, attached as **Exhibit 3**.
[23] *See* Leslie Easton's 03/20/2015 Aff'd, attached as **Exhibit 5**l *see also* Plaintiff's 02/20/2015 Dep/ p/ 95-96, attached as **Exhibit 14**.

However, in its analysis of the plaintiff's retaliation claim, the Court addressed the plaintiff's proffered comparator evidence to support his retaliation claim and that the plaintiff's termination was retaliatory pretext, and stated,

> "…a plaintiff must first establish a prima facie case of retaliation by demonstrating "(1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *King v. Rumsfeld,* 328 F.3d 145, 150–51 (4th Cir.2003). *If the plaintiff* establishes a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory basis for the action. "….**While not necessarily required, comparator evidence— "evidence that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably"—is " 'especially relevant' to a showing of pretext**." *Id.* (quoting McDonnell Douglas, 411 U.S. at 804, 93 S. Ct. 1817).

*See* Lewis, 621 Fed. Appx. 163 at 165. (emphasis added).

Here, Plaintiff proffers these allegations as a comparator. Plaintiff purchased a DVD, one day early from the sale date and paid more for the DVD than what the DVD's sale price was the date it became available for sale (12/13/2012).[24] Plaintiff was suspended by Mr. Kunze for this incident for three weeks without pay, and in contrast, Christine Haley violated the employee purchase policy on a number of occasions, Mr. Kunze knew about this, and took no action against Ms. Haley.[25]

For these reasons, these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

---

[24] *See* Plaintiff's 08/24/2015 Aff'd ¶19, attached as **Exhibit 1**.
[25] *See* Leslie Easton's 03/20/2015 Aff'd ¶11, attached as **Exhibit 5**; *see also* Plaintiff's Dep. p. 95-96, attached as **Exhibit 14**.

8. **Allegations that Caucasian employees, including Marsha Dichara, Roger Bourn, Gary Hein, Aaron LeKarz, Lydia Cole, and Glenn Carl**.

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant. Plaintiff proffers these allegations as comparator evidence that Plaintiff was treated unfairly pursuant to his 04/25/2012 incident where he was suspended for allegedly violation Defendant's Work Place Violence Policy and was ultimately terminated on 07/16/2012 allegedly because of this alleged violation.[26] The record evidence shows that the three (3) other individuals aside from Plaintiff who submitted statements related to this incident, Tia Person, Angela Corprew and Charles "Mike" Deinlen, made uniform statements during the investigation of this incident. *See* Ms. Person's, Ms. Corpew's and Mr. Deinlein's statements related to the workplace violence incident, collectively attached as Exhibit 8. These individuals stated, among other things, Plaintiff pushed Mike Deinlein and bumped Tia Person. Further, Tia Person's deposition testimony contradicted these statements regarding the 04/25/2012 incident.[27]

Moreover, these allegations are admissible as comparator evidence. *See* <u>Lewis v. Gibson</u>, 621 Fed. Appx. 163 (4th Cir. 2015), <u>cert. denied sub nom.</u> <u>Lewis v. McDonald</u>, 136 S. Ct. 840, 193 L. Ed. 2d 744 (2016)(*See* the <u>Lewis</u> analysis related to the admissibility of comparator evidence in a case involving a retaliation claim, which is stated above). As stated above, although the <u>Lewis</u> Court ruled the plaintiff had insufficient support for his retaliation claim, where the basis for the plaintiff's retaliation claim was the plaintiff's EEOC complaint, the court noted several

---

[26] *See* the 07/16/2012 Trmn Lttr, attached as **Exhibit 6** "…terminated from the circumstances [that occurred on 04/25/2012] surrounding your suspension").

[27] *See* Tia Person's Dep. p. 82, 85-86, 101, attached as **Exhibit 7**; *See also* the statements of Tia Person, Angela Corprew, Charles "Mike" Deinlein, and Plaintiff, from the investigation of the 04/25/2012 incident, collectively attached as **Exhibit 8**; *see also* Plaintiff's Aff'd ¶25, attached as **Exhibit 1**.

reasons that can be distinguished from our case and cited <u>McDonnell Douglas</u> in stating that comparator evidence in determining retaliatory pretext is "especially relevant". *See* <u>Id</u>.

Moreover, Defendant's Human Resources manager/director, Karen Graham, and Defendant's Loss Prevention Manager/Investigator, Allen Tlusty, at all times pertinent hereto, submitted Affidavit's wherein Ms. Graham and Mr. Tlusty discussed the investigations and dispositions of the individuals named in the allegations above.[28] Specifically, Ms. Graham in her Affidavit contrasted her investigation and disposition of the some of the individuals stated in allegations above and contrasted it to her investigation and disposition of Mr. Colfield as it relates to Mr. Colfield's alleged violation of Defendant's workplace violence policy.[29]

For these reasons these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

> **9.     Allegations that Caucasian employees, including Sean Ford, Brittney Putresk, and Salvati, violated Safeway's Employee Purchase Policy, but were not suspended.**

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant. Plaintiff proffers these allegations as a comparator. Plaintiff purchased a DVD, one day early from the sale date and paid more for the DVD than what the DVD's sale price was the date it became available for sale (12/13/2012), which the Court recognizes as one of the four categories of adverse actions Defendant Safeway directed at Plaintiff in reaction to Plaintiff's protected activity as stated *infra*.[30] Further, similar to the comparator evidence related to other Defendant's employees non-disciplinary action and/or investigation of alleged violations of Defendant's workplace violence policy, these allegations are

---

[28] *See* Allen Tlusty's 07/13/2015 Aff'd ¶28, attached as **Exhibit 15** (Dkt. #88-12); *see also* Karen Graham's 11/08/2015 Aff'd ¶3-8, attached as **Exhibit 16** (Dkt. #106-1).

[29] *See* Karen Graham's 11/08/2015 Aff'd ¶3-8, attached as **Exhibit 16** (Dkt. #106-1).

[30] *See* Dkt. #114 at p. 2); *see also* Plaintiff's 08/24/2015 Aff'd ¶18, attached as **Exhibit 1.**

admissible as comparator evidence. (For example, Plaintiff was punish more severely than his co-workers, although their infractions resulted in loss to Safeway or benefit to themselves, while this was not the case regarding Plaintiff's alleged infraction) *See* Lewis v. Gibson, 621 Fed. Appx. 163 (4th Cir. 2015), cert. denied sub nom. Lewis v. McDonald, 136 S. Ct. 840, 193 L. Ed. 2d 744 (2016)(*See* the Lewis analysis related to the admissibility of comparator evidence in a case involving a retaliation claim as stated above).

Moreover, Defendant's Loss Prevention manager/investigator at all times pertinent hereto, Allen Tlusty, submitted an Affidavit in this case which stated the circumstances surrounding Mr. Tlusty's investigation of other Defendant employees who allegedly violated Defendant's Employee Purchase Policy.[31]

For these reasons, these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

C. **Response to Defendant's Third Motion *In Limine*: The Court should permit references to allegations and events prior to January, 2011**.

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant. The events that gave rise to Plaintiff's racially motivated complaint to Karen Graham took place when Plaintiff returned to work at Defendant between September 2010 and January 2011 when Defendant was working on light duty status. In September 2010, through at the latest October 15, 2011, Plaintiff's co-workers approached him to assist them with filing their own grievances and/or complaints, based on race discrimination, against Defendant.[32] Shortly thereafter, Mr. Kunze substantially restricted Plaintiff's interaction with his co-workers.[33]

---

[31] *See* Allen Tlusty's 07/13/2015 Aff'd ¶ 22-27, attached as **Exhibit 15** (Dkt. #88-12).
[32] *See* Plaintiff's 08/24/2015 Aff'd ¶12-16, attached as **Exhibit 1**.
[33] *See* Id. at ¶10, attached as **Exhibit 1**.

Additionally, between September 2010 and January 2011, Plaintiff requested to Mr. Kunze that he be allowed to work on Sundays.[34] However, Mr. Kunze denied this request, even though two of Plaintiff's Caucasian co-workers who were also on light duty status, Tiffany Mertes and Crystal Adams, were allowed to work on Sundays.[35] Also, as early as 2008, Plaintiff who was a union show steward, lodged a number of grievances about race discrimination incidents of which Safeway had knowledge. This evidence in relevant to establish background and context regarding the current allegations.

For these reasons, these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

> **D.**     **Response to Defendant's Fourth Motion *In Limine*: The Court should permit references to grievances Plaintiff filed with the Union (a/k/a U.C.F.W Local 27), on his own behalf or on behalf of other employees, that do not relate to alleged race discrimination**.

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant. Plaintiff, was a member of the collective bargaining unit, U.C.F.W Local 27, the Union that had a Collective Bargaining Agreement (CBA) with Defendant. Between 2004 and 2009 Plaintiff was a shop steward for Local 27. The CBA outlines the process for union members to report complaints of discrimination based on race, age, sex, and/or religion, or sexual harassment, through their union.[36]

Moreover, Defendant's human resource advisor, Ms. Karen Graham, was directly involved in the investigation of Plaintiff's union grievances starting with Plaintiff's September 21, 2011

---

[34] *See* Id. ¶11, attached as **Exhibit 1**.

[35] *See* Id. at ¶12, attached as **Exhibit 1**.

[36] *See* the portion of the CBA between Defendant and U.C.F.W Local 27, attached as **Exhibit 9;** *See also* Plaintiff's 08/24/2015 Aff'd ¶9, attached as **Exhibit 1**. Plaintiff was reinstated to Defendant following his termination and thereafter filed a grievance based on race discretion with Union Local 27 and was reinstated at Defendant.

grievance against Defendant based on race discrimination and retaliation.[37] Factual support for Plaintiff's retaliation claim is also based on Plaintiff's protected activities in filing grievances based on race discrimination and harassment. For these reasons, these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

### E.    Response to Defendant's Fifth Motion *In Limine*: The Court should permit evidence of purported comparators involved in dissimilar misconduct.

These allegations are admissible at trial as it is highly relevant and are essential to the factual basis of Plaintiff's retaliation claim against Defendant. Specifically, this Court recognizes where a plaintiff brings a retaliation claim against the defendant, "…while not necessarily required, comparator-evidence--- "evidence that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably" ---is 'especially relevant' to a showing of pretext." *See* Lewis, 621 Fed. Appx. 163 at 165(quoting (quoting McDonnell Douglas, 411 U.S. at 804, 93 S. Ct. 1817)(In Lewis, the plaintiff brought the sole claim of retaliation under Title VII against the defendant).

Here, Plaintiff's comparator evidence includes among others; (1) two Caucasian employees, Tiffany Mertes and Crystal Adams, who were Plaintiff's Caucasian co-workers and on light duty status at the times pertinent hereto; (2) Christine Haley, Plaintiff's Caucasian co-worker who violated Defendant's Employee Purchase Policy multiple times, and Mr. Kunze took no disciplinary action against her.[38] As it relates to Defendant's Employee Purchase Policy, one of

---

[37] *See* Plaintiff's 08/24/2015 Aff'd ¶21, attached as **Exhibit 1**. "On November 26, 2011, I [Plaintiff] met with Ms. [Karen] Graham and [U.C.F.W.] Local 27 representative, Suzie Levin, about my charges of discrimination and grievances pertaining to harassment, discrimination and retaliation during his [Plaintiff's] employment."; *see also* Plaintiff's 08/24/2015 Aff'd ¶25, attached **Exhibit 1**; *see also* Plaintiff's 10/15/2011 filed EEOC charge, attached as **Exhibit 3.**

[38] *See* Leslie Easton's 03/20/2015 Aff'd, attached as **Exhibit 5**; *see also* Plaintiff's Dep. p. 95-96, attached as **Exhibit 14.**

Defendant's adverse actions against Plaintiff was suspending him for three weeks without pay for purchasing a DVD, one day before the DVD was on sale and when Plaintiff paid more for the DVD than what its sale price was once it became available; and (3) the investigations that were conducted into Plaintiff's co-workers as it compares to Plaintiff's alleged violation of Defendant's Workplace Violence policy. As it relates to this incident, Plaintiff was suspended without pay following his alleged violation of Defendant's workplace violence policy from an incident that occurred on 04/25/2012, where the record evidence shows contradictions regarding the circumstances surrounding the 04/25/2012 incident.[39] The 04/25/2012 incident occurred one day after Plaintiff attended a fact-finding meeting with Ms. Karen Graham, Mark Robbins, and Susie Levin regarding Plaintiff's 10/15/2011 filed EEOC charge against Defendant for race discrimination and retaliation.[40]

Moreover and stated above, Defendant submitted into discovery its investigation and disposition of Plaintiff's co-workers regarding their alleged violations of Defendant's Employee Purchase Policy and/or Workplace Violence Policy. Specifically, two Affidavits were submitted by Defendant's employees, Defendant's HR Manager/Director Karen Graham and Defendant's Loss Prevention Manager/Investigator, Allen Tlusty, two persons essential to the investigation and dispositions of employees who allegedly violate these policies, in order to compare their investigation and disposition of Plaintiff's co-workers to Plaintiff's alleged violation of the Employee Purchase Policy and Workplace violence policy.[41]

---

[39] *See* Tia Person's Dep. p. 82, 85-86, 101, attached as **Exhibit 7**; *see also* the statements of Tia Person, Angela Corprew, Charles "Mike" Deinlein, and Plaintiff, regarding the investigation of the 04/25/2012 incident, collectively attached as **Exhibit 8**; *see also* Plaintiff's 08/24/2015 Aff'd ¶25, attached as **Exhibit 1**.
[40] *See* Plaintiff's 08/24/2015 Aff'd ¶25, attached as **Exhibit 1**.
[41] *See* Allen Tlusty's 07/13/2015 Aff'd ¶28, attached as **Exhibit 15** (Dkt. #88-12); *see also* Karen Graham's 11/08/2015 Aff'd ¶3-8, attached as **Exhibit 16** (Dkt. 106-1).

For these reasons, these allegations are relevant and its probative value is not substantially outweighed by prejudicial effect, if any, and therefore are admissible at trial.

**F.** **Response to Defendant's Sixth Motion *In Limine*: The Court should permit emails to Jackson Lewis P.C. and should permit Plaintiff to call Defendant Safeway's current and former counsel as witnesses at trial**.

These allegations are admissible at trial as it is highly relevant to Plaintiff's retaliation claim, as it falls squarely within the purview of the factual basis for Plaintiff's retaliation claim against Defendant.

In Defendant's document production in this case Defendant submitted a 06/04/2012 email that stated part of, if not Plaintiff's entire basis for his retaliation claim against Defendant.[42] The 06/04/2012 included, among other things, Plaintiff's denied ability to work on Sundays while on light duty, Mr. Kunze substantially limiting Plaintiff's interaction with his co-workers, and Plaintiff's assistance with his co-worker, Ms. Rashida Daniels-Gordon's sexual harassment claim against Defendant's employee, Mr. Jimmy Bennett. The text messages between Ms. Daniels-Gordon and Jimmy Bennett that support the basis for Ms. Daniels-Gordon's sexual claim were sent as an Attachment along with the 06/04/2012 email to Ms. Boyd.[43]

Ms. Boyd, at all times pertinent to her position as Defendant's counsel, was the Associate Attorney at the law firm, Jackson Lewis, P.C. and was supervised by the Partner at this law firm, and Defendant's counsel at all times pertinent hereto, Larry R. Seegull, Esq. While Plaintiff was out of work on his suspension from the 04/25/2012 incident where Plaintiff allegedly violated Defendant's workplace violence policy, Plaintiff submitted the email to Ms. Boyd, which was then forwarded directly to Defendant's Human Resources advisor, Ms. Karen Graham, who was the

---

[42] *See* the 06/04/2012 Email sent from Plaintiff to Ms. Linda Boyd, at that time pertinent hereto, Defendant's counsel, attached as **Exhibit 9**; *See also* Plaintiff's 03/25/2015 Aff'd ¶6, attached as **Exhibit 10.**
[43] *See* the 06/04/2012 Email, attached as **Exhibit 9**.

"point of contact" for the investigation involving Plaintiff's 10/15/2011 EEOC charge against Defendant and who was decision-maker related to Plaintiff's internal grievances for race discrimination and retaliation against Defendant[44] Thereafter, Ms. Graham had an off-site meeting with Ms. Rashida Daniels-Gordon during work hours regarding her sexual harassment claim in early July 2012, and Ms. Graham had the 06/04/2012 email Plaintiff sent to Ms. Boyd in her hand during this meeting.[45] Shortly thereafter, Defendant terminated Plaintiff on July 16, 2012 for the circumstances surrounding his suspension, which resulted from Plaintiff's alleged violation of Defendant's workplace policy on 04/25/2012.[46]

Moreover, as it relates to Defendant's contention to exclude the 06/04/2012 email and calling Ms. Boyd and Mr. Seegull as witnesses at trial, the Maryland Rules of Professional Conduct permit the admissibility of the 06/04/2012 email and for Plaintiff to call Ms. Boyd and Mr. Seegull as witnesses at trial. This Court in Randolph v. PowerComm Const., Inc. recognized that if the attorney's testimony, who will be proffered as a witness will be consistent with testimony of other fact witnesses at trial, calling the attorney as a witness at trial is permissible under MRPC 3.7. 309 F.R.D. 349, 367, 2015 WL 5009958 (D. Md. 2015), reconsideration denied sub nom. Randolph v. Powercomm Constr., Inc., GJH-13-1696, 2015 WL 6438087 (D. Md. Oct. 20, 2015) In its reasoning in Randolph, the Court stated,

> In determining whether the potential for dual roles should be permitted based on substantial hardship to the client under Rule 3.7(a)(3), the court balances the *367 interests of the client against the interests of the opposing side and the trier of fact. *See EEOC v. Bardon, Inc.,* RTW–09–cv–1883, 2010 WL 323067 at *2 (D. Md. Jan. 19, 2010). In determining the interests of the opposing side and the trier of fact, the court considers whether the lack of the attorney's testimony may mislead the trier of fact, whether the lack of the attorney's testimony would hurt the opposing party's case, and

---

[44] *See* Karen Graham's 03/23/2012 Lttr, attached as **Exhibit 11**.
[45] *See* Rashida Daniels-Gordon's 03/20/2015 Aff'd, attached as **Exhibit 12**.
[46] *See* the 07/16/2012 Trmn Lttr, attached as **Exhibit 6**.

whether the attorney's testimony would conflict with other witnesses' testimonies.

*See* 309 F.R.D. 349 at 366-67.[47]

Here, Plaintiff's testimony, Ms. Boyd's testimony, and Mr. Seegull's testimony would be consistent. The proffered testimony would be as follows; After the fact-finding meeting at the EEOC on April 24, 2012, Plaintiff sent the 06/04/2012 email to Linda Boyd, Esq., looking for legal help with his case, without knowing that she was representing Safeway. This email was then submitted to Ms. Karen Graham , Defendant representative in charge of investigation Plaintiff's grievances and EEOC charge, investigating Plaintiff's allege violation of Defendant's policies, and suspending and/or terminating Plaintiff's employment. Ms. Graham then secretively use the information from the 06/04/12 email against Plaintiff and to terminate Plaintiff's employment. [48]

For these reasons, the 06/04/2012 email from Plaintiff to Ms. Boyd is admissible and Plaintiff should be permitted to, as it intends to do so, call Linda Boy, Esq. and Larry Seegull, Esq. as witnesses at trial, as the testimony Plaintiff anticipates Ms. Boyd and Ms. Seegull will proffer at trial allows them to testify under MRPC 3.7, their testimony is relevant, and their testimony's probative value is not substantially outweighed by its unfair prejudice.

**G.** **Response to Defendant's Seventh Motion *In Limine*: The Court should permit Plaintiff to call Plaintiff's treating licensed certified clinical social worker, Ms. Terryle Williams, MS, LCSW-C, as an expert witness at trial**.

Regardless of the late disclosure (Plaintiff concedes that a report was not submitted pursuant to Fed. R. Civ. P. 26(a)(2)), Plaintiff should be permitted to call Ms. Williams as a

---

[47] citing Md. Rule 16-812, Rules of Prof. Conduct 3.7(a). "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."

[48] *See* Karen Graham's 03/23/2012 Lttr, attached as **Exhibit 11**; *see also* Karen Graham's 09/10/2012 Decltn, attached as **Exhibit 13**.

damages witness and to render her expert opinion, in her capacity as a licensed certified clinical social worker, who has treated Plaintiff for his condition since April 2012, that Plaintiff's depression, post-traumatic stress disorder, and hyper vigilance, among other psychological conditions were proximately caused by the circumstances surrounding Plaintiff's retaliation claim against Defendant. Ms. Williams' opinions are directly related to Plaintiff's claims for damages against Defendant in this case. Ms. Williams can very well be considered a hybrid fact/expert witnesses, and Defendant's counsel had over a year and a half, since Ms. Williams was first referenced at Plaintiff's 02/20/2015 discovery deposition in this case, if not before to investigate the scope of Ms. Williams' knowledge. Defendant's counsel, if it chose to do so, could have obtained information regarding opinions and bases for Ms. Williams' opinions through subpoenaing Ms. Williams for a discovery deposition or through supplemental interrogatories. Sullivan v. Glock, Inc., 175 F.R.D. 497, 506 (D. Md. 1997). Further, this court relaxes the requirement of the Fed. R. Civ. P. 26(a)(2) disclosure, and allow expert testimony to be admitted if the opposing party was on notice of the possibility of the expert testimony being proffered. Pertinent to this issue, the Sullivan Court stated,

> When faced with a situation where no required expert disclosures have been made, or materially incomplete disclosures have been made, counsel must make a tactical decision. If the most important goal is to avoid surprise at trial or last minute discovery about expert testimony on the eve of trial, then counsel should consider filing a motion to compel adequate disclosures or in the alternative to exclude expert testimony as soon as possible following the discovery cutoff, so that if the court declines to exclude the expert's testimony, the opinions of that expert may be discovered, and a rebuttal expert engaged as far as possible ahead of trial. Alternatively, **if the most important goal of the attorney is to preclude the expert from testifying at trial by evoking the automatic exclusion provisions of Rule 37(c)(1), he or she should remember that this course is not risk free, and that the exclusion of evidence is a severe sanction which the court may be reluctant**

**to impose despite Rule 37(c)(1)**. At least one court, for example, has recently refused to strike an expert's testimony for failing to comply with Rule 26(a)(2)(B) disclosures where the party moving for exclusion waited until the day before the discovery cut-off to challenge the adequacy of the report. *See* <u>Harvey v. District of Columbia</u>, 949 F. Supp. 874, 877 (D.D.C.1996) (noting that had the moving party "promptly communicated with the plaintiff, they could have met and conferred about the report and still would have had time to file a motion to compel production of a supplemental report.").

<u>Id</u>. at 506. (emphasis added).

Further, unlike obtaining an expert opinion from a doctor, Ms. Williams' opinions as a licensed clinical social worker and her sound basis and methodology related to those opinions is not so complex to where Defendant's counsel cannot adequately prepare for cross-examination of Ms. Williams at trial. Ms. Williams will render the simple opinion, in summary as follows: "Mr. Colfield's psychological condition (depression, hyper vigilance, and post-traumatic stress disorder, among others) is proximately caused by the allegations related to Plaintiff's retaliation claim against Defendant. The basis for Ms. Williams' opinion is her ongoing treatment sessions of Plaintiff in her capacity as a licensed clinical social worker. For these reasons, Plaintiff should be permitted to call Ms. Williams to testify as an expert witness on behalf of Plaintiff at trial.

Moreover, Defendant's cited case law to support its contention that Ms. Williams' testimony related to her expert opinions on behalf of Plaintiff should be precluded at trial is inapplicable to this case. <u>Ihnken v. Jenkins, et al</u>. involved a claim brought by the plaintiff against Frederick County and several of Frederick County's officials under constitutional theories. No. CIV. CCB-11-3508, 2015 WL 590562, at *1 (D. Md. Feb. 11, 2015).

The facts in <u>Ihnken</u> are dissimilar to those in this case: The <u>Ihnken</u> plaintiff organized a festival in Frederick County, Maryland, that was to be held Thursday, June 18, 2009, through June 21, 2009. <u>Id</u>. On the afternoon of Friday, June 19, however, county officials revoked the temporary

land use permit that ostensibly authorized that festival and ordered the immediate cancellation of all festival programming. Id. The plaintiff subsequently brought a lawsuit suing the county and many of its officials on a host of legal theories. The plaintiff's claims were dismissed at the summary judgment stage and the remaining claim, which denied summary judgment was the plaintiff's claims against the defendants, that the defendants revoked the plaintiff's permit without due process of the law in violation of the Fourteenth Amendment of the U.S. Constitution and Article 24 of the Maryland Constitution. Id.

Here, Ms. Williams is designated by Plaintiff to render her opinions of Plaintiff's psychological condition at trial, which is directly related to Plaintiff's claims for damages against Defendant in this case. As stated above, Defendant was on notice of the possibility and/or probability of Ms. Williams testifying on behalf of Plaintiff's and, specifically, to render her opinions in her capacity as Plaintiff's treating licensed certified clinical professional counselor, that Plaintiff's issues at Defendant caused his injuries. For these reasons, Ms. Williams' anticipated testimony to render her expert opinions at trial should not be precluded and Plaintiff should be permitted to call her as a witness to testify as an expert and in her capacity as licensed clinical social worker.

      **H.**     **Response to Defendant's Eighth Motion *In Limine*: The Court should permit Plaintiff to call all witnesses not specifically identified in Plaintiff's Witness List**.

Plaintiff should not be limited to the witnesses designated in Plaintiff's Proposed Witness List.[49] Plaintiff should be permitted to call any witness not already designated in the pleadings, interrogatories, and depositions in this case. Further, Plaintiff should be permitted to call any witness Defendant calls at trial that has not already been mentioned, in any way, in the pleadings,

---

[49] *See* Dkt. #139.

interrogatories, and/or discovery depositions in this case, and for any reason at trial. District courts have broad discretion in determining whether a nondisclosure is substantially justified or harmless. Mayor & City Council of Baltimore v. Unisys Corp., No. JKB-12-CV-614, 2013 WL 4784118, at *4 (D. Md. Sept. 5, 2013)(citing *See* Carr v. Deeds, 453 F.3d 593, 602 (4th Cir.2006); also citing Southern States Rack and Fixture, Inc. v. Sherwin–Williams Co., 318 F.3d 592, 597 (4th Cir.2003)("District Courts have broad discretion in determining whether a nondisclosure is substantially justified or harmless). Thus, Plaintiff should be allowed to call individuals to be witnesses at trial who are not specifically identified on Plaintiff's Witness List.

I.       **Response to Defendant's Ninth Motion *In Limine*: The Court should permit evidence related to Plaintiff's claim that the Union (a/k/a U.C.F.W Local 27) instructed him to stop assisting co-workers.**

These allegations are admissible at trial as it is highly relevant to Plaintiff's retaliation claim, as it falls squarely within the purview of the factual basis for Plaintiff's retaliation claim against Defendant. Plaintiff's assistance of his co-workers, who are also members of U.F.C.W Local 27, is a reason Defendant targeted Plaintiff by directing Mr. Jimmy Bennett, the store manager at Defendant's Owings Mills store in January through at least April 2012, to fire Plaintiff because of his assistance with his co-workers' race discrimination and sexual harassment claim(s) against Defendant (namely, Rashida Daniels-Gordon, Maria Jones, and Mark Robbins). On these grounds alone

Further, Plaintiff's Union, Local 27's representative, Susie Levin, was directly involved in the investigations of Plaintiff's 10/15/2011 EEOC charge and Plaintiff's co-workers Rashida Daniels-Gordon's and Mark Robbins's grievances and/or EEOC charges against Defendant where Plaintiff assisted them in bringing these grievances and/or charges against Defendant (Rashida Daniels-Gordon's sexual harassment complaint, grievance, and/or EEOC charge against

Defendant, specifically Mr. Bennett, and Mark Robbins's EEOC charge for discrimination based on religion against Defendant). As it relates to Plaintiff's EEOC charge and Mark Robbins' EEOC charge, Local 27's representative, Susie Levin, attended and actively participated at Plaintiff's and Mr. Robbins's 04/24/2012 fact-finding conference regarding their EEOC charges for race discrimination and retaliation, and discrimination based on religion respectively.[50]

Moreover, after Plaintiff was terminated from Defendant in 2007 for assisting his co-worker Mark Prince who is Caucasian, and Plaintiff was fired and no disciplinary action was taken by Defendant against Mr. Prince, Plaintiff filed a grievance against Defendant, based on race discrimination and was thereafter reinstated at Defendant.

For these reasons, Plaintiff's assistance of his co-workers who sought to file their own complaints with Local 27 and/or charges with the EEOC for race and religion discrimination, and sexual harassment, was protected activity, and given Local 27's relationship with Defendant as it relates to Local 27's involvement with Defendant for these types of grievances and/or EEOC charges against Defendant, these allegations are relevant, and its probative value is not substantially outweighed by its unfair prejudice and therefore Plaintiff should be permitted to reference these allegations at trial.

> **J.**      **Response to Defendant's Tenth Motion *In Limine*: The Court should permit evidence related to Plaintiff's claim for back pay and front pay**.

Evidence of Plaintiff's Back Pay and Front Pay is admissible at trial. Documents related to Plaintiff's finances to Defendant's counsel at this stage do not preclude Plaintiff's claims for damages related to back pay and front pay. Pertinent to this issue, The Court in <u>Ford v. Ridigplay Rafters, Inc., et al.,</u> states,

---

[50] *See* Plaintiff's 08/24/2015 Aff'd ¶25, attached as **Exhibit 1**.

> When the unlawfully-discharged employee produces evidence supporting the claim for back pay, the employer may defeat the claim by proving that the employee failed to mitigate damages by seeking comparable work. *Edwards v. School Bd. of Norton,* 658 F.2d 951, 956 (4th Cir.1981); *Martin,* 48 F.3d at 1358. When the employee fulfills the initial burden of producing evidence establishing an entitlement to back pay, the burden shifts to the employer to prove that the employee was not reasonably diligent, and that a reasonable chance of finding comparable employment existed. Donnelly v. Yellow Freight Sys., Inc., 874 F.2d 402, 411 (7th Cir.1989), *aff'd,* 494 U.S. 820, 110 S. Ct. 1566, 108 L.Ed.2d 834 (1990).

984 F. Supp. 386, 389 (D. Md. 1997)

Moreover, and unlike the plaintiff in Ford, Plaintiff took and continues to take reasonable efforts to obtain other employment after he was terminated from Defendant Safeway. Plaintiff testified in his discovery deposition that he has sought multiple jobs and has submitted his applications related thereto into Unemployment.

| | |
|---|---|
| Q. | So you have records of all of your jobs that you looked for? |
| A. | Well, you had to turn in records at Unemployment. |
| Q. | I understand, but you have records of all the jobs you looked for or applied to? |
| A. | I have them at home, yes. |
| … | |
| A. | I just send those in to Unemployment. |
| Q. | I understand that…[51] |

Moreover, Plaintiff inadvertently failed to disclose his 2012, 2013 and 2014 tax returns, but is in possession of them and will disclose these documents to the Court and Defendant's counsel prior to trial. Plaintiff and his wife filed joint tax returns in 2012, 2013 and 2014. Plaintiff was unaware that for Plaintiff to claim back pay and front pay in this case, it is required that Plaintiff present these documents to the Court. Thus, Plaintiff will disclose his tax returns, filed jointly with his wife, from 2012, 2013 and 2014 that are in his possession prior to trial.

---

[51] *See* Plaintiff's 02/20/2015 Dep. p. 230:10-22, attached as **Exhibit 14** (*see also* Dkt. #133-3).

For these reasons, Plaintiff should be permitted to proffer evidence and testimony related to Plaintiff's claims for back pay and front pay against Defendant.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff requests for this Honorable Court to deny Defendant's Consolidated Motions *In Limine*, grant Plaintiff any such other relief the cause may require, and rule as follows:

(1)    Permit testimony and written statements purportedly made by Defendant Safeway's actual and/or apparent agent, servant, and/or employee at all times pertinent hereto, Mr. Jimmy Bennett;

(2)    Permit testimony and other evidence regarding Plaintiff's allegations of race discrimination;

(3)    Permit references to allegations and events prior to January, 2011;

(4)    Permit references to grievances Plaintiff filed with the Union (a/k/a U.C.F.W Local 27), on his own behalf or on behalf of other employees, that do not relate to alleged race discrimination;

(5)    Permit evidence of purported comparators involved in dissimilar misconduct;

(6)    Permit emails to Jackson Lewis P.C. and permit Plaintiff to call Defendant Safeway's current and former counsel as witnesses at trial;

(7)    Permit Plaintiff to call Plaintiff's treating licensed certified clinical social worker, Ms. Terryle Williams, LCSW-C, as an expert witness at trial;

(8)    Permit Plaintiff to call witnesses not specifically identified on Plaintiff's Witness List;

(9)    Permit evidence related to Plaintiff's claim that the Union (a/k/a U.C.F.W Local 27) instructed him to stop assisting co-workers; and

(10)   Permit evidence related to Plaintiff's claim for back pay and front pay.

Respectfully submitted

/s/ *George A. Rose*

George A. Rose, Esquire, #26086
John J. Leppler, Esquire, #19736
Rose Law Firm, LLC
200 E. Lexington St., Suite 1305
Baltimore, Maryland 21202
Telephone: 410-727-7555
Facsimile: 443-320-0962
Email: grose@roselawfirm.net
Email: attorneyleppler@roselawfirm.net